BANKHEAD *v* MAYOR OF RIVER ROUGE

1. STATUTES—HOUSING FACILITIES ACT—LEGISLATIVE INTENT—SCOPE
   OF TITLE—POPULATION REQUIREMENT—MUNICIPAL CORPORATIONS.
      Michigan Supreme Court may recognize the intention of the
   Legislature as set forth in the title of an act where the title
   has a population requirement with regard to cities and the
   body of the act contains no such population requirement
   (MCLA 125.651 *et seq.*).

2. STATUTES—HOUSING FACILITIES ACT—SCOPE OF TITLE—CONSTITU-
   TIONAL LAW—ONE-OBJECT LIMITATION—MUNICIPAL CORPORATIONS.
      The population limitation in the title of an act, which states
   in part that it is an act to authorize any city "to create
   a board of tenant affairs in any city of 1,000,000 or over
   having a housing commission and operating 1 or more
   housing projects", is read into a section of the body of the
   act, which states that "[t]here is created a board of tenant
   affairs for each city, village or township having a housing
   commission and operating 1 or more housing projects as
   provided by this act"; since River Rouge, a city of less
   than 20,000 persons, does not meet the population standard,
   it is not entitled to the benefits of that section because
   legislators or the public would have had no notice during
   the passage of this act that cities of less than 1,000,000
   people would be included in that section (Const 1963, art
   4, § 24, MCLA 125.699).

3. STATUTES—LOCAL ACT—SPECIAL ACT—MUNICIPAL CORPORATIONS
   —POPULATION CLASSIFICATION.
      Legislation classification by population will be upheld where
   there is a reasonable relationship between the restriction
   and the population and the fact that legislation contains a
   population classification which limits the present application

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 50 Am Jur, Statutes §§ 219, 223 *et seq.*
[3, 4] 16 Am Jur 2d, Constitutional Law § 551 *et seq.*

of an act to municipalities over 1,000,000 does not necessarily make the act local or special (MCLA 125.651 *et seq.*).

4. CONSTITUTIONAL LAW — EQUAL PROTECTION — CLASSIFICATION — HOUSING FACILITIES ACT.

Equal protection of the laws does not prevent a reasonable classification by legislative enactment and the ultimate decision as to the wisdom of such laws rests with the Legislature which could reasonably determine that tenants of public housing projects in large cities face considerably different problems than do tenants in smaller cities, such as to warrant classification in the municipal housing facilities act which gives tenants in a public housing project a board of tenant affairs only in those projects in cities with populations of 1,000,000 or more (MCLA 125.651 *et seq.*).

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and Levin and O'Hara, JJ., reversing Wayne, Thomas Roumell, J. Submitted May 3, 1972. (No. 7 May Term 1972, Docket No. 53,579.) Decided June 20, 1972.

35 Mich App 7 affirmed.

Complaint by Francis Bankhead and others for a writ of mandamus to compel John McEwan, Mayor of River Rouge, to establish a board of tenant affairs. Judgment for plaintiffs. Defendant appealed to the Court of Appeals. Reversed. Plaintiffs appeal. Affirmed.

*Wayne County Neighborhood Legal Services* (by *Craig P. Colby*), for plaintiffs.

*Logan & Huchla,* City Attorneys, for defendant.

PER CURIAM. This is an action for a writ of mandamus to compel the Mayor of the City of River Rouge to establish a board of tenant affairs. River Rouge has a population of less than 20,000

persons, 300 units of low income housing, and a
housing commission. Plaintiffs are tenants in the
housing units.

The title of 1968 PA 344 reads as follows:

"An act to authorize any city, village or township
to purchase, acquire, construct, maintain, operate,
improve, extend and repair housing facilities; to
eliminate housing conditions which are detrimental
to the public peace, health, safety, morals or wel-
fare;   *   *   *   to create by a commission with
power to effectuate said purposes,   *   *   *   to
authorize any such city, village or township to issue
notes and revenue bonds;   *   *   *   to regulate the
rentals of such projects and the use of the revenues
of the projects; to prescribe the manner of selecting
tenants for such projects; to provide for condemna-
tion of private property for such projects;   *   *   *
to receive aid and cooperation of the federal govern-
ment; to provide for a referendum thereon; *to
create a board of tenant affairs in any city of
1,000,000 or over having a housing commission and
operating 1 or more housing projects;*   *   *   *   ."
(Emphasis added.)

Section 49 of the act reads:

"There is created a board of tenant affairs for
*each city, village or township* having a housing com-
mission and operating 1 or more housing projects
as provided by this act." (Emphasis added.)

Defendant's motion for accelerated judgment was
denied by Judge Thomas Roumell who found that
the act provided for a Board of Tenant Affairs in
River Rouge.

Upon appeal to the Court of Appeals, a majority
of the panel reversed the circuit court on the basis
that where the body of the act is broader in scope
than the limitations of the title, the title prevails.
(35 Mich App 7 [1971]). The Court of Appeals

also ruled that this holding did not deprive plaintiffs of equal protection or violate the Michigan constitutional ban against special or local acts (Const 1963, art 4, § 29) as the classification in the title was reasonable.

Judge LEVIN, concurring in part and dissenting in part, agreed that the population limitation must be read into section 49. However, he found that the population classification was unreasonable and created a special or local act. To save the act, he would have eliminated the population classification altogether.

Plaintiffs were granted leave to appeal to this Court. (386 Mich 754.)

*I. Is section 49 of 1968 PA 344 (MCLA 125.699;*
*MSA 5.3056[3]), unconstitutional for fail-*
*ure to conform to the object of the act*
*as stated in its title?*

In the case of *Maki v East Tawas*, 385 Mich 151 (1971), the constitutionality of an act (1964 PA 170)[1] was challenged. The title of the act purported to grant governmental immunity from injuries caused by negligence. Section 7 of the body of the act purported to grant governmental immunity from all tort liability. The majority opinion noted that "negligence" was a specific legal action (a "species of a generic action based in torts") and to construe "torts" to mean "torts caused by negligence," "would require this Court to engage in judicial legislation." (385 Mich 151, 158). A majority held that the scope of section 7 was broader than the title and, therefore, violated art 4, § 24 of the Michigan Constitution of 1963.[2]

---

[1] MCLA 691.1407; MSA 3.996(107).

[2] "No law shall embrace more than one object, which shall be expressed in its title.  *  *  *  ."

In *Vernor* v *Secretary of State,* 179 Mich 157, 160 (1914), it was said:

"What is the constitutional test? We think it is that a title must embrace the object of the act, and the body of the act must not be inconsistent with the title. The pertinent questions should be: Does the title of the act fairly indicate the purpose of the legislation? Is the title a fair index of the act? Does the title of the act fairly inform the legislators and the public of its purposes, as a whole?"

In the case of *Ryerson* v *Utley,* 16 Mich 269, 277 (1868), it was said:

"The constitution provides (*article 4, § 20*) that no law shall embrace more than one object, which shall be expressed in its title. We have heretofore had occasion to consider this section, and have said of it that it ought to be construed reasonably, and not in so narrow and technical a sense as unnecessarily to embarrass legislation   *   *   *   ."[3]

In the present case, even though the title has a population requirement with regard to cities, the fact that the body of the act contains no such population requirement does not prevent this Court from recognizing the intention of the legislature as set forth in the title. In *Callaghan* v *Chipman,* 59 Mich 610, 614–615 (1886), the Court quoted with approval from Cooley, Constitutional Limitations (1st ed), p 149:

" '[A]s the Legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to *preclude* many matters being included in the act which might, with entire propriety, have been embraced in one enactment with the matters indicated by the title,

[3] See also: *People* v *Mahaney,* 13 Mich 481 (1865); *City of Gaylord* v *Gaylord City Clerk,* 378 Mich 273 (1966).

but which must now be excluded because the title
has been made unnecessarily restrictive. The courts
*cannot* enlarge the scope of the title. They are
vested with no dispensing power. The constitution
has made the *title* the *index* to the legislative intent
as to what shall have operation. It is no answer
to say that the title might have been made more
comprehensive, if in fact the Legislature have not
seen fit to make it so.' *  *  * .

"The object and purpose of the constitutional pro-
vision now under consideration is stated by Mr.
Justice COOLEY, in the case of *People* v. *Mahaney*,
13 Mich. 481 [1865], as follows: After referring
to a practice which had prevailed of bringing to-
gether into one bill subjects diverse in their nature,
and saying that it was corruptive both to the legis-
lature and the State, he adds:

" 'It was scarcely more so, however, than another
practice, also intended to be remedied by the con-
stitutional provision, by which, through dexterous
management, claims were inserted in bills of which
the titles gave no intimation, and their passage
secured through legislative bodies whose members
were not generally aware of their intention and
effect. *  *  * The framers of the constitution
meant to put an end to legislation of the vicious
character referred to, which was little less than a
fraud upon the public, and to require that in every
case the proposed measure should stand upon its
own merits, and that the legislature should be
*fairly notified* of its design when required to pass
upon it.' " (Emphasis by Court.)

Legislators or the public would have had no notice
during the passage of this act that cities of less
than 1,000,000 people would be included in section
49. The population limitation in the title is read
into section 49 of the body of the act. Since River
Rouge does not meet the population standard, it is
not entitled to the benefits of section 49.

*II. Is section 49 of 1968 PA 344 unconstitutional
as a local act or because it violates
equal protection?*

The population limitation restricts the application of section 49 to the City of Detroit. The questions of whether the population limitation constitutes a local act or is a denial of equal protection as an unreasonable classification are discussed in the majority opinion of the Court of Appeals. We agree with the reasoning of that opinion.

The Court of Appeals is affirmed. No costs.

T. M. KAVANAGH, C. J., and BLACK, ADAMS, T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred.