GREEN v COURT ADMINISTRATOR

GREEN v HART

1. STATUTES—TITLE OF ACT—PROBATE JUDGES—CONSTITUTIONAL LAW.

    A statute proscribing the general practice of law by certain probate judges is reasonably within the title of the probate code, which speaks of the organization, powers, and duties of probate judges, and is therefore not repugnant to the constitutional provision requiring that no law shall embrace more than one object, which shall be expressed in its title (Const 1963, art 4, § 24; MCLA 701.3).

2. STATUTES—CONSTITUTIONAL LAW—PROBATE JUDGES—PRACTICE OF LAW—EQUAL PROTECTION.

    The Legislature is justified in allowing probate judges in less populated counties the privilege of practicing law in addition to their judicial duties since the less populated counties have neither the resources to compensate nor the case load to occupy a full-time probate judge; the statute proscribing the general practice of law by probate judges in heavily populated counties but permitting such practice in less populous counties is not violative of the equal protection clauses of the Federal and State Constitutions (US Const, Am XIV; Const 1963, art 1, §§ 1, 2, 17; MCLA 701.3).

3. ATTORNEY AND CLIENT—PRACTICE OF LAW—PROPERTY RIGHT.

    The right to practice law is not a property right but rather a privilege granted by the state and may be surrounded by whatever restrictions the Legislature may in reason prescribe.

Appeal from Clinton, William R. Peterson, J. Submitted Division 3 September 8, 1972, at Lansing. (Docket No. 14140.) Decided December 7, 1972. Leave to appeal denied, 389 Mich 760.

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur, Statutes § 202.
[2] 46 Am Jur 2d, Judges § 56.
[3] 7 Am Jur 2d, Attorneys at Law § 1.

Complaint by Timothy M. Green against William R. Hart, Court Administrator, for declaratory judgment as to the constitutional validity of a section of the probate code prohibiting the general practice of law by certain probate judges. Plaintiff appeals from a judgment upholding the constitutionality of the act. Affirmed.

*Fraser, Trebilcock, Davis & Foster,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Stewart H. Freeman,* Assistant Solicitor General, and *Charles Alpert,* Assistant Attorney General, for defendant.

Before: Holbrook, P. J., and Fitzgerald and T. M. Burns, JJ.

Per Curiam. The plaintiff, Timothy M. Green, has been the elected and sitting probate judge of Clinton County since 1957. At all times while holding this post, he has carried on an extensive general law practice and has had cases before the various probate, district, circuit, and appellate courts of this state.

On May 18, 1971, plaintiff brought suit in Clinton County Circuit Court to test the constitutionality of § 3 of 1969 PA 271 (MCLA 701.3; MSA 27.3178[3]).

The statute in question grows out of the Legislature's reorganization of the probate courts pursuant to Const 1963, art 6, § 15.[1] Section 2a of the act

---

[1] Const 1963, art 6, § 15 provides that:

"In each county organized for judicial purposes there shall be a probate court. The legislature may create or alter probate court districts of more than one county if approved in each affected county by a majority of the electors voting on the question. The legislature may provide for the combination of the office of probate judge with any judicial office of limited jurisdiction within a county with supplemental salary as provided by law. The jurisdiction, powers and duties

revising the probate courts[2] established 20 probate court districts by pairing up in twos and threes 42 of the 45 counties[3] which lie north of a line consisting of the northern boundaries of Muskegon, Kent, Montcalm, Isabella, Midland, and Bay counties. These new probate districts were to be created when approved by the majority of the electors in each of the counties affected. To date, only the counties of the seventh and seventeenth probate districts have approved the redistricting plan.[4]

The statute under assault, which is part of the act reorganizing the probate courts, provides:[5]

"Commencing January 1, 1971, the judges previously elected or appointed, or to be thereafter elected or appointed, except judges of a county comprising part of a proposed probate court district in which the electors of 1 or more counties thereof did not approve the same, *shall not engage in the practice of law other than as a judge* and shall receive an annual salary of $20,000.00, 3/4 to be paid by the state and 1/4 by the county or counties comprising the district." (Emphasis supplied.)

---

of the probate court and of the judges thereof shall be provided by law. They shall have original jurisdiction in all cases of juvenile delinquents and dependents, except as otherwise provided by law."

The committee comments to this section state:

"This is a revision of Sec 13, Art VII, of the present constitution to permit the legislature to combine counties into probate districts with the approval of a majority of the voters of each county involved. It also permits the legislature to provide for the combination of the office of probate court with any judicial office of a court of limited jurisdiction within a county.

"These permissive provisions are included to make possible better administration of these courts in the smaller counties of the state." 2 Official Record, Constitutional Convention 1961, p 3387.

[2] 1969 PA 271 (MCLA 701.2a; MSA 27.3178[2a]).

[3] The counties of Marquette, Delta, and Chippewa were not included.

[4] These counties are Emmet-Charlevoix and Clare-Gladwin respectively.

[5] 1969 PA 271 (MCLA 701.3; MSA 27.3178[3]), amended by 1971 PA 96 without significant change.

Save the four counties which have approved the redistricting plan, this statute in effect permits the general practice of law by those probate judges in counties located north of the so-called Bay-Muskegon line, but prohibits the general practice of law by their brethren in those counties situated south of this line. Thus under the statute, the plaintiff, as probate judge of Clinton County, is foreclosed from practicing law other than as a probate judge.[6]

A nonjury trial was held on the constitutionality of the statute. Thereafter, the Clinton County Circuit Court by a judgment and order dated April 12, 1972, enjoined the plaintiff from the further practice of law and gave him 30 days in which to either wind up his private practice, resign as probate judge, or seek appellate review. This Court on May 12, 1972, granted plaintiff's motion for a stay of the proceedings pending a disposition of the instant appeal.

The plaintiff has launched a multi-pronged attack against the statute here in question. Initially plaintiff contends that "the unamended title to the probate code is inadequate to express the purpose of prohibiting [the] practice of law by certain probate judges" and that "the prohibition itself constitutes a second object of the statute not germane to its purposes as declared in its title", and thereby violates Const 1963, art 4, § 24. This argument is without merit.

Article 4, § 24, of the Constitution of 1963 provides in pertinent part:

"No law shall embrace more than one object, which shall be expressed in its title."

The Supreme Court, quoting from *MacLean v*

---

[6] For clarity, it should be noted that Clinton County is located south of the Bay-Muskegon line.

*State Board of Control for Vocational Education,*
294 Mich 45, 48–49 (1940), in the case of *Maki v
East Tawas,* 385 Mich 151, 157–158 (1971), stated
that this section of the constitution was drafted (1)
to prevent the Legislature from passing laws not
fully understood; (2) to fairly notify the Legislature
of a proposed statute's design; (3) to aid the Legis-
lature and the public in understanding that only
subjects germane to the title would be included in
the legislation; and (4) to curtail "log-rolling" by
preventing the bringing into a bill diverse subjects
not expressed in its title.

In *Ryerson v Utley,* 16 Mich 269, 277 (1868),
quoted with approval in *Bankhead v Mayor of
River Rouge,* 387 Mich 610, 614 (1972), it was said:

> "The constitution provides *(article 4, § 20)* that no law
> shall embrace more than one object, which shall be
> expressed in its title. We have heretofore had occasion
> to consider this section, and have said of it that it ought
> to be construed reasonably, and not in so narrow and
> technical a sense as unnecessarily to embarrass legisla-
> tion * * * ."

The concept of reasonableness is the hallmark of
the cases which have interpreted and applied
Const 1963, art 4, § 24 and its forerunners. The
authorities are replete with such words and
phrases as "germane", "reasonably harmonious",
"fairly indicate", and "construed reasonably". See,
for example, *Bankhead v Mayor of River Rouge,*
35 Mich App 7 (1971), *aff'd* 387 Mich 610 (1972);
*Continental Motors Corp v Muskegon Twp,* 376
Mich 170 (1965); *Leininger v Secretary of State,*
316 Mich 644 (1947); *Vernor v Secretary of State,*
179 Mich 157 (1914); *McKeller v Detroit,* 57 Mich
158 (1885); *Ryerson v Utley, supra.* In short, it is
enough if the title of an act fairly indicates to a
reasonable and inquiring mind the general scope,

intent, and purpose of the law. *Baker v State Land Office Board,* 294 Mich 587 (1940).

The title of the probate code, 1939 PA 288, wherein the contested statute is found, states that it is:

"AN ACT to revise and consolidate the statutes relating to the organization and jurisdiction of the probate courts of this state; the powers and duties of such courts, and the judges and other officers thereof * * * ."

Viewed in the light of the authorities and principles arrayed above, it is readily apparent that the statute proscribing the general practice of law by certain probate judges is reasonably within the title of the act which speaks of organization, powers, and duties of probate judges.

We hold, therefore, that § 3 of 1969 PA 271 (MCLA 701.3; MSA 27.3178[3]) is not repugnant to art 4, § 24 of the Constitution of 1963.

Second, it is plaintiff's position that inasmuch as the statute at issue prohibited him as probate judge of Clinton County from practicing law while at the same time permitting probate judges in other counties of northern Michigan to practice law, it is discriminatory and a violation of the due-process and equal-protection clauses of the Michigan and United States Constitutions.[7] Plaintiff's argument is not persuasive.

A line very similar to the Bay-Muskegon line contained in § 2a of 1969 PA 271 was upheld in *Baker v State Land Office, supra.* In *Baker* the area north of the line contained, in addition to the counties involved in the instant case, the counties of Midland and Isabella. The line in *Baker* divided the state for the purpose of selling tax-delinquent

---

[7] Const 1963, art 1, §§ 1, 2, 17 and US Const, Am XIV.

land. The petitioner contended that such discrimination was unconstitutional because it added conditions to the rights of landowners in northern
counties which were not placed upon landowners
in southern counties. The Michigan Supreme
Court upheld the constitutionality of the division
noting that the Legislature had exercised careful
discretion in separating the more populous southern counties, where private interests would generally maintain lands by regularly paying property
taxes from the lands in the northern counties, a
large portion of which had already reverted to the
state for nonpayment of property taxes. The Court
concluded that the statutory discrimination under
these circumstances was justified and reasonable.

The most recent case concerning legislation distinguishing between various areas of the state is
*Bankhead v Mayor of River Rouge, supra.* In this
case the constitutionality of § 49 of the municipal
housing facilities act was at issue.[8] Section 49
created boards of tenant affairs for cities with
housing commissions and housing projects. The
title of the act provided that it would apply to any
city of one million population or over, *i.e.,* Detroit.
Plaintiffs, tenants of a housing project in the City
of River Rouge, sought a writ of mandamus to
compel the defendant mayor to establish a board
of tenant affairs according to § 49. On appeal,
plaintiffs argued that § 49 was unconstitutional
because it denied them equal protection of the law.
The Michigan Supreme Court upheld the constitutionality of § 49 and adopted this Court's opinion,
wherein we said:

"Legislative classification by population will be upheld where there is a reasonable relationship between
the restriction and population. *Hayes v Auditor Gen-*

8 MCLA 125.699; MSA 5.3056(3).

*eral* (1915), 184 Mich 39; *Kates v Reading* (1931), 254 Mich 158; *Chamski v Wayne County Board of Auditors* (1939), 288 Mich 238; *Sullivan v Graham* (1953), 336 Mich 65. * * * Equal protection of the laws does not prevent a reasonable classification by legislative enactment and the ultimate decision as to the wisdom of such laws rests with the Legislature. *Tribbett v Village of Marcellus* (1940), 294 Mich 607, 614.

"We are unable to say that restriction of the act as expressed in the title of the legislation is arbitrary. The Legislature could reasonably determine that tenants of public housing projects in large cities face considerably different problems than do tenants in smaller cities, such as to warrant classification. For example, tenants in large city public housing projects must compete with a greater number of tenants for individual attention. Tenants of such projects—because they live in the midst of huge urban areas—must cope with not only living in public housing but also living in large cities. Many such distinguishing features exist."[9]

The rationale of both *Baker* and *Bankhead* apply to the case at hand. The reason for distinguishing between the northern and southern counties of the state relative to the general practice of law by probate judges is essentially based upon population. The southern counties are large enough in population to support at least one full-time probate judge. The northern counties are too small in population to support a full-time probate judge without the pairing provided in § 2a of 1969 PA 271. Since under our constitution each county no matter what its size may choose to have its own probate judge and inasmuch as these less populated counties have neither the resources to compensate nor the case load to occupy a full-time probate judge, the Legislature was justified in allowing those probate judges in the less populated

[9] See 35 Mich App 7, 16–17 (1971).

counties the privilege of practicing law in addition to their judicial duties.

We hold, therefore, that 1969 PA 271, § 3 (MCLA 701.3; MSA 27.3178[3]) did not deny the plaintiff equal protection of the law under either the Michigan or the United States constitutions.[10]

Next the plaintiff asserts, on due-process grounds, that he is being denied a valuable property right in that he may no longer practice law. This argument is specious.

The right to practice law is not a property right. It is a privilege granted by the state and may be surrounded with whatever restrictions the Legislature may in reason prescribe. *Ayres v Hadaway,* 303 Mich 589, 596 (1942).

The statute at issue gave the plaintiff timely and adequate notice that a prohibitory law would curtail his general law practice and that if he chose to retain his post as probate judge, he would be compensated for the loss by an increased salary.

Plaintiff has a clear choice. He may either resign his judgeship and continue private practice or wind up the private practice and be compensated as a full-time probate judge. Under these circumstances, we find no deprivation of due process, and we so hold.

Finally, the defendant asserts that it was unlawful for the plaintiff to accept less than his statutory salary. This issue is irrelevant to the merits of this appeal and will neither be discussed nor decided.

Accordingly, the judgment and order of the Clinton County Circuit Court is affirmed.

---

[10] The nature and scope of the equal protection of the laws is the same under both the Michigan and United States Constitutions. *Fox v Employment Security Commission,* 379 Mich 579 (1967).