HILDEBRAND v REVCO DISCOUNT DRUG CENTERS

SMITH v B P OIL, INC

Docket Nos. 63170, 70837. Submitted July 10, 1984, at Detroit.— Decided September 4, 1984. Leave to appeal applied for.

Carole S. Hildebrand and Betty Lou Tomlin brought an action against their former employer, Revco Discount Drug Centers, claiming that Revco violated the Forensic Polygraph Examiners Act (FPEA) and the Elliott-Larsen Civil Rights Act by requiring them to undergo polygraph examinations as a condition of employment and by discharging them as a result of the examinations. The Wayne Circuit Court, Myron H. Wahls, J., granted partial summary judgment to defendant Revco, holding that FPEA was unconstitutional but that the civil rights act was constitutional and that Revco, by requiring the examinations, violated that act. Revco appealed by leave granted (Docket No. 63170).

James P. Smith, an employee of B P Oil, Inc., was discharged from his employment after submitting to a polygraph examination. He brought an action against B P Oil alleging, among other things, that by discharging him as a result of his having failed the polygraph examination B P Oil violated the FPEA. B P Oil's motion for partial summary judgment on that count was denied by the Wayne Circuit Court, Joseph B. Sullivan, J. Defendant B P Oil appealed by leave granted, questioning the constitutionality of the FPEA (Docket No. 70837). The two cases were consolidated by the Court of Appeals for submission and decision. *Held:*

1. The former FPEA provision prohibiting an employer from

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law §§ 212-218.

[2, 4] 73 Am Jur 2d, Statutes § 97 *et seq.*

[3, 4] 16A Am Jur 2d, Constitutional Law § 260 *et seq.*

29 Am Jur 2d, Evidence § 831.

Validity and construction of statute prohibiting employers from suggesting or requiring polygraph or similar tests as condition of employment or continued employment. 23 ALR4th 187.

Physiological or psychological truth and deception tests. 23 ALR2d 1306.

discharging an employee for refusing to take or for failing a polygraph examination and imposing penalties on the employer for a violation of the provision was unconstitutional. The provision was not contemplated by the title of the act as required by Const 1963, art 4, § 24. Rather, the purpose of the act was to control polygraph examiners, their qualifications, and the operation of their machines. The conclusion that there were two separate subjects in the statute is buttressed by the fact that the Legislature subsequently repealed the provision relating to employers and enacted 1982 PA 44, which deals specifically with the protection of employees from the use of polygraph examinations by employers. Defendant B P Oil's motion for partial summary judgment should have been granted.

2. Similarly, the polygraph provisions of the civil rights act rendered that act unconstitutional, initially because the title of the act contained no reference to the use of polygraph examinations and subsequently, when the title was amended to contain that reference, because the act then had more than one object, since the prohibition of the use of polygraph examinations as a basis for hiring or firing is not germane to the purpose of the civil rights act. The Legislature had since severed the polygraph provisions of the civil rights act. The trial court's holding that the Elliott-Larsen Civil Rights Act was constitutional is reversed insofar as that holding upheld the polygraph provisions of the act.

Reversed.

1. STATUTES — PRESUMPTION OF CONSTITUTIONALITY.

A statute is presumed to be constitutional and will not be declared unconstitutional unless it is clearly so, or so beyond a reasonable doubt.

2. CONSTITUTIONAL LAW — TITLE-OBJECT PROVISION.

The purposes behind the constitutional requirement that no law shall embrace more than one object, which shall be expressed in its title, are (1) to prevent the Legislature from passing laws not fully understood, (2) to fairly notify the Legislature of a proposed statute's design and purpose, (3) to aid the Legislature and the public in understanding that only subjects germane to the title would be included in the legislation, and (4) to prevent the bringing into one bill diverse subjects not expressed in its title (Const 1963, art 4, § 24).

3. STATUTES — POLYGRAPH EXAMINATIONS — CONSTITUTIONAL LAW.

The Forensic Polygraph Examiners Act, prior to the repeal of

§ 26 thereof, was unconstitutional because the purpose of § 26, to prevent an employer from using polygraph tests as the basis for discharge of an employee, was not included in the title of the act and was a purpose separate from the stated purpose of the act, that of controlling polygraph examiners, their qualifications, and the operation of their machines (Const 1963, art 4, § 24; MCL 338.1701 *et seq.*; MSA 18.186[1] *et seq.*).

4. CIVIL RIGHTS — CONSTITUTIONAL LAW — POLYGRAPH EXAMINATIONS — STATUTES.

The prohibition of the use of polygraph tests or results as a basis for hiring or firing employees is not germane to the Elliott-Larsen Civil Rights Act, the purpose of which is to prevent discrimination against a person because that person belongs to a stated group; therefore, the civil rights act, prior to a 1982 amendment which repealed the sections pertaining to such prohibition, unconstitutionally embraced more than one object; because the polygraph provisions are severable, the balance of the civil rights act remains constitutional (Const 1963, art 4, § 24; MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Roy, Shecter & Vocht* (by *Lynn H. Shecter* and *Michelle E. Vocht*), for plaintiffs Hildebrand and Tomlin.

*Thomas H. Bleakley, P.C.* (by *Brian J. McKeen*), for plaintiff Smith.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Joseph A. Ritok, Jr.*, and *Robert C. Ludolph*), for Revco Discount Drug Centers.

*Honigman, Miller, Schwartz & Cohn* (by *L. A. Hynds* and *L. A. Nathanson*), for B P Oil, Inc.

Before: BEASLEY, P.J., and J. H. GILLIS and R. B. MARTIN,* JJ.

R. B. MARTIN, J. In *Smith v B P Oil, Inc*, the plaintiff was the manager of one of the defendant's

* Former circuit judge, sitting on the Court of Appeals by assignment.

service stations. After the station was burglarized, the plaintiff signed a statement granting permission for the taking of a polygraph examination. The examination was given, plaintiff was discharged from employment, and plaintiff brought suit on December 2, 1981, on four separate counts. Count II alleged that the defendant had violated the Michigan Forensic Polygraph Examiners Act, MCL 338.1701 *et seq.;* MSA 18.186(1) *et seq.* The defendant moved for a partial summary judgment on this count and the motion was denied. Leave to appeal was granted and the parties are here for a determination of the constitutionality of the Forensic Polygraph Examiners Act (FPEA).

In the *Hildebrand* case filed March 31, 1981, two employees of Revco, having had their employment terminated, sued the employer claiming Revco violated the FPEA and the polygraph provisions of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* by requiring plaintiffs to undergo polygraph examinations as a condition of employment and by discharging them as a result of those examinations. Plaintiffs here claim they bring a class action in favor of all employees of the defendant in their situation.

In considering the *Smith* case we look at the history of the Forensic Polygraph Examiners act, 1972 PA 295. The title therein stated:

"An act to license and regulate persons who purport to be able to detect deception, verify truthfulness, or provide a diagnostic opinion of either through the use of any device or instrumentation as lie detectors, forensic polygraphs, deceptographs, emotional stress meters or similar or related devices and instruments; to create a state board of forensic polygraph examiners with licensing and regulatory powers over all such persons and instruments; to provide for administrative proceedings and court review; to establish minimum standards

and requirements for all such instrumentation or devices and to prohibit the use of instruments or devices which do not meet minimum standards and requirements; and to provide for injunctions and penalties."

The act then contained sections implementing the various items contained in the title. It also had a § 26 which provided that an employer could not discharge an employee because such employee refused a polygraph examination or because of the belief that the employee had failed one.

1975 PA 278 did not materially change the content of the title but it did amend § 26. In addition to prohibiting the employer from discharging the employee for refusing to take a polygraph examination or for apparently failing one, the act now added that an employer guilty of violating § 26 would be guilty of a misdemeanor and could be fined not more than $1,000. In addition, ¶ 7 stated that an employer found guilty of violating § 26 would be liable for double wages lost due to the illegal discharge in addition to court costs and reasonable attorney fees.

1982 PA 46 repealed § 26 of the FPEA and 1982 PA 44 created the Polygraph Protection Act of 1981 which specifically prohibited employers from using polygraphs as a basis of hiring or firing employees. MCL 37.201 et seq.; MSA 17.65(1) et seq. This was the sole purpose of the new act.

Was the FPEA unconstitutional? We begin with the hornbook rule of law in *Rohan v Detroit Racing Ass'n,* 314 Mich 326, 342; 22 NW2d 433 (1946):

" 'Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provi-

sion of the Constitution that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt.' "

See also *Hall v Calhoun County Bd of Supervisors,* 373 Mich 642; 130 NW2d 414 (1964), and *Cruz v Chevrolet Grey Iron Division of GMC,* 398 Mich 117; 247 NW2d 764 (1976).

The constitutional provision we are here dealing with is from the 1963 Constitution, art 4, § 24:

"No law shall embrace more than one object, which shall be expressed in its title. No bill shall be altered or amended on its passage through either house so as to change its original purpose as determined by its total content and not alone by its title."

There are four judicially recognized purposes behind the single object clause: (1) to prevent the Legislature from passing laws not fully understood, (2) to fairly notify the Legislature of a proposed statute's design and purpose, (3) to aid the Legislature and the public in understanding that only subjects germane to the title would be included in the legislation, and (4) to curtail "logrolling" by preventing the bringing into one bill of diverse subjects not expressed in its title. *Green v Court Administrator,* 44 Mich App 259; 205 NW2d 306 (1972); *MacLean v State Bd of Control for Vocational Ed,* 294 Mich 45; 292 NW 662 (1940).

Our courts have expressed this in several ways. *Rohan v Detroit Racing Ass'n, supra,* p 356:

" '[T]he provision is designed to serve two purposes. *First,* to prevent * * * "bringing together into one bill subjects diverse in their nature, and having no necessary connection * * *." And, *second,* to "challenge the attention" of those affected by the act to its provisions.

*People v Wohlford,* 226 Mich 166, 168; 197 NW 558 (1924).' " (Emphasis in original.)

*Maki v City of East Tawas,* 385 Mich 151, 157; 188 NW2d 593 (1971), stated:

" 'The constitutional provision was designed mainly * * * to avoid bringing into one bill subjects diverse in their nature and having no necessary connection' ".

The *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 465; 208 NW2d 469 (1973), stated succinctly:

"[T]he purpose of this constitutional limitation is to insure that both the legislators and the public have proper notice of legislative content".

In addition, in *Kent County ex rel Bd of Supervisors v Reed,* 243 Mich 120; 219 NW 656 (1928), we find a disapproval of an act where a provision was not so connected to the act as to be germane to it. The object of the act in the objectionable provision could have been enacted in a separate law without either referring to or supporting the other.

A review of the title and the sections of FPEA clearly shows it was an act to control polygraph examiners, their qualifications, and their operation of their machines. Section 26 relative to employers and a penalty to be assessed against them for a particular use of polygraphs was a subject entirely separate and apart from the stated purpose of the act and was nowhere included in this title. No one reading the title of the act would be expected to know that employers might be subject to civil and criminal penalties if they used polygraph tests as the basis for discharge of an employee. We note the word "employer" is not even included in the

definitions of the act or its amendments. The very fact that the Legislature in 1982 by PA 46 repealed § 26 and by PA 44 created legislation specifically and solely aimed at the protection of employees from the use of polygraphs by employers is a sure indication that we have separate subjects in the statute governing the examiners and in the statute governing the employers. The provision relative to employer's liability was not included in the title of the act. FPEA was unconstitutional. Defendant B P Oil's motion for partial summary judgment should have been granted. Appellees wish to have any determination that the act was unconstitutional be effective prospectively only. This we decline to do because the provisions were unconstitutional from the very beginning.

In the *Hildebrand* case we have some of the same legal issues as we find in James Smith's lawsuit. In *Hildebrand* the attention is focused on the Elliott-Larsen Civil Rights Act. A brief history of that act is of some assistance in solving the problem arising from the questioning of its constitutionality. It was originally passed as 1976 PA 453. It was slightly amended in 1977. 1978 PA 610 added § 205a with eight subparagraphs. These subparagraphs prohibited most employers from governing their hiring and firing practices by polygraph test refusals or results. The title was not amended in any respect material to our issue. It stated:

"An act to define civil rights; to prohibit discriminatory practices, policies, and customs in the exercise of those rights based upon religion, race, color, national origin, age, sex, height, weight or marital status; to preserve the confidentiality of records regarding arrest, detention, or other disposition in which a conviction does not result; to prescribe the powers and duties of

the civil rights commission and the department of civil rights; to provide remedies and penalties".

1979 PA 91 amended the title to include:

"to limit the use of polygraph * * * or similar tests in certain employment situations".

Section 205b was also added giving employers the right to announce that tests were available together with a notice that refusal to take the test would not affect employability. This act became effective August 1, 1979.

The individual plaintiffs underwent employer-operated polygraphs on January 27, 1981, and on May 11, 1981. They claim theirs is a class action but we are not sure if any of their claimed class had actions arising before the effective date of 1979 PA 91.

The Elliott-Larsen Civil Rights Act is a different statute entirely than FPEA with different goals and purposes, and different ways of arriving at those goals and purposes.

We believe that, as first amended, the act was unconstitutional as its title certainly contained nothing relative to the use of polygraph examinations in the long list of civil rights the act was created to protect. We would refer to the *Smith* discussion to avoid redundancy.

When the title was amended to include reference to polygraph tests, we then had an act with more than one object. The extremely broad scope of the civil rights act was definitely aimed at practices discriminating against persons because of their belonging to particular categories defined by religion, race, color, national origin, age, height, weight or marital status. It gave protection against discrimination because of belonging to one of these

classifications when seeking employment, use of public accommodations, education, real estate transactions, etc. It created a commission and set civil remedies for unlawful practices.

"The ultimate purpose of all civil rights legislation is to guarantee nondiscrimination in treatment and equality before the law, and to achieve such a purpose, *civil rights legislation generally requires that each individual be considered on the basis of his individual capabilities and not on the basis of any characteristics generally attributable to a group.*" 15 Am Jur 2d, Civil Rights, § 1, p 282. (Emphasis supplied.)

Persons are protected if they belong to certain groups. The statute, § 202, states:

"(1) An employer shall not: (a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202; MSA 3.548(202).

The groups protected are identifiable by known discernable characteristics as set forth in the act.

Applicants for employment or employees who may object to polygraphs are not an identifiable group. The reason for not using polygraphs in hiring and firing procedures are rooted in laws of evidence, not in the principle of equal treatment or equality before the law. Courts frown on the admissibility of polygraph tests because they are not consistently reliable, *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977), and not because they deprive someone of civil rights. Very simply, the prohibiting of polygraphs as a basis for hiring or firing is not germane to the civil rights statute,

whose purpose is to prevent discrimination against a person because that person belongs to a stated group.

The fact the title was amended to include the polygraph provision does not remove the constitutional objection that the act contained more than one subject. *Kent County ex rel Bd of Supervisors v Reed, supra.*

Appellees seem to agree that perhaps on its face the use of polygraphs in employment situations does not seem to fit into the civil rights enactment. They do argue that in actual practice use of polygraphs and other similar tests do in fact discriminate against blacks and may well discriminate against older people, people with high blood pressure, etc. In their brief and in their oral argument appellees discussed an array of claimed scientific studies showing that racial differences exist in several components in resistance response to various tests similar to portions of the polygraph tests. They claim blacks suffer more from hypertension than whites and this also creates differential results in the tests between blacks and whites.

Our problem with appellees' studies are these: Apparently the studies have been given to relatively few people, so they are limited in the weight to be given them. They certainly are not well-known, recognized and accepted in legal circles. They have not been tested in the crucible of a trial or hearing with cross-examination of experts and rebuttal testimony. We cannot say at this time under the facts of our case that polygraph results discriminate against anyone simply because of their religion, age, race, color, national origin, etc. Polygraphs are a subject separate and distinct from civil rights protected by Elliott-Larsen.

We note that *Seals v Henry Ford Hospital,* 123

Mich App 329; 333 NW2d 272 (1982), did not rule specifically on the question of the constitutionality of the Elliott-Larsen act with the polygraph provision included. The Court did specifically find that the polygraph provisions were severable. Thus, they saved the constitutionality of the act and certainly gave us a broad hint that it might well make the act unconstitutional if the provisions were left intact as a part of the act.

We agree with *Seals* that the polygraph provisions are severable and that this severability saves the balance of the act from being unconstitutional, and its real basic purpose of the defense of civil rights can continue. It is clear that the polygraph provision was put in as an afterthought, an attempt to wedge a regulation into a vessel not competent to carry it. In fact, the Legislature has since severed those portions: 1982 PA 45 removed the reference to polygraphs from the title and from § 102, and repealed §§ 205a(2)-(8) and 205b. As with the provisions removed from the FPEA, these provisions can be found in the Polygraph Protection Act.

If in actual practice polygraph examinations do discriminate against blacks, plaintiffs might have a right to prove their contentions by following the procedure apparently used in *Griggs v Duke Power Co,* 401 US 424; 91 S Ct 849; 28 L Ed 2d 158 (1971).

Appellees argue that, if the polygraph amendments are severable, they can serve as a basis of an independent cause of action since polygraph tests are against public policy. They cite *Sventko v Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976). This allegation can best be tested by amended pleadings and motions thereon in the trial court.

In the *Hildebrand-Tomlin* case the decision of the trial court to hold that Elliott-Larsen was constitutional is reversed. We hold that part of the act relative to polygraph examinations was unconstitutional and severable.