# Court of Appeals, State of Michigan

## ORDER

Cheboygan Sportsman Club v Cheboygan County Prosecuting
Attorney

Docket No.    313902

LC No.       12-008331-CZ

Amy Ronayne Krause
Presiding Judge

E. Thomas Fitzgerald

William C. Whitbeck
Judges

The Court orders that the October 2, 2014 opinion is hereby AMENDED. The opinion is amended as follows to correct clerical errors:

On page 2, the fourth paragraph, the first sentence should read "Plaintiff then commenced the instant litigation, seeking to preclude defendant . . . ".

On page 6, the first paragraph, the first sentence should read "It has always been the law that statutes must be construed . . . ".

On page 6, the first paragraph, the fourth sentence should read "*Madugula v Taub*, 496 Mich 685, 696; ___ NW2d ___ (2014)".

On page 7, the third paragraph, the second sentence should read " . . . Cheboygan County Prosecuting Attorney regarding plaintiff's Club . . ."

On page 4, the last full paragraph, the first sentence should read "However, then Michigan Attorney General, Frank J. Kelley . . ."

On page 7, the first paragraph, the fourth sentence should read ". . . as was Attorney General Frank J. Kelley . . ."

On page 7, the second paragraph, the first sentence should read ". . . Attorney General Frank J. Kelley . . ."

In all other respects, the October 2, 2014 opinion remains unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

OCT 09 2014
_____
Date

_____
Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

---

CHEBOYGAN SPORTSMAN CLUB,

       Plaintiff-Appellee,

v

CHEBOYGAN COUNTY PROSECUTING
ATTORNEY,

       Defendant-Appellant.

FOR PUBLICATION
October 2, 2014
9:05 a.m.

No. 313902
Cheboygan Circuit Court
LC No. 12-008331-CZ

---

Before: RONAYNE KRAUSE, P.J., and FITZGERALD and WHITBECK, JJ.

RONAYNE KRAUSE, P.J.

Defendant appeals by right an order of declaratory judgment holding that the prohibition against discharging firearms within 150 yards of occupied residences in MCL 324.40111(6), [1] which is part of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*, is inapplicable to plaintiff's shooting range. We affirm, albeit on different grounds.

The underlying facts in this matter are not in any serious dispute. Plaintiff owns and operates a shooting range for both long guns and handguns, and it has done so since approximately 1952. At the time it commenced operations, no residences were located in its vicinity. Over the years, plaintiff has improved the range and received a safety certification from the National Rifle Association (NRA). According to the Michigan Department of Licensing and Regulatory Affairs, the "Sportsman Subdivision" was platted in 1974, due north of plaintiff's shooting range, in a fairly isolated wooded area near the shore of Lake Huron. At some point— the record does not disclose when, nor can we discover it from public information of which we may take judicial notice pursuant to MRE 201—a residence was constructed on Lots 43 and 44

---

[1] This provision states that "[a]n individual shall not hunt or discharge a firearm within 150 yards of an occupied building, dwelling, house, residence, or cabin, or any barn or other building used in connection with a farm operation, without obtaining the written permission of the owner, renter, or occupant of the property." At the time the trial court granted summary disposition, this subsection was located, with identical language, at MCL 324.40111(5). It was relocated to § 40111(6) pursuant to 2012 PA 340, and we will refer to its present location.

of the Sportsman Subdivision. That residence is within the 150-yard zone specified by MCL 324.40111(6). Only Lot 45 would have been closer to the shooting range. It appears that no other occupied structures are within 150 yards of the range.

That residence came to be owned by Roger Watts. We again do not know when, although the records available to us from the Cheboygan County Register of Deeds suggest that he may have acquired the property in 2004 or 2005. Watts was, in fact, formerly a member of plaintiff's Club. We note that plaintiff contends in its brief on appeal that Watts was "aware of the ranges and activities associated with the Club prior to moving to the area," a fact not explicitly stated in the record insofar as we can find. Nonetheless, it would be absurd to contend that any individual purchasing Lots 43 and 44, or building on those lots, could possibly have been unaware of the existence and nature of the shooting range at the time. It is therefore unambiguous and not seriously disputable that Watts came to the vicinity of the range, rather than the opposite. However, Watts executed a handwritten statement contending, *inter alia*, that the more recent users of the shooting range appeared no longer to appreciate the need to use "lighter" shooting loads.

On June 19, 2012, Watts reported to the Cheboygan County Sheriff Department that he had found a bullet on his property that he believed had come from the Club's range. The investigating officer opined that it appeared to be a 9mm bullet. Although Watts allowed the bullet to be photographed, Watts refused to turn it over. Watts noted that this was not the first time he had found a stray bullet on his property. Further investigation determined that only one person had been shooting a handgun on the range recently, and that had been a .22 caliber pistol that was being fired in an easterly direction. The matter was turned over to the prosecutor's office, which informed plaintiff that "any individual discharging a firearm within 150 yards of a residence should face criminal prosecution for violating MCL 324.40111."

Plaintiff then commenced the instant litigation, seeking to preclude plaintiff from enforcing MCL 324.40111 against the Club's members. Plaintiff asserted that, when read in context, MCL 324.40111 only prohibits a hunter from discharging a firearm within 150 yards of an occupied dwelling. The NRA, in an amicus brief, contended that even if MCL 324.40111 applied outside the context of hunting, the Cheboygan Sportsman Club was entitled to immunity from civil suit under the Sport Shooting Ranges Act, MCL 691.1541 *et seq*. The trial court agreed with the NRA's contention, holding that the two statutes were incompatible and the latter, being the more specific, prevailed. The trial court concluded that, unless the prosecutor could show that the Cheboygan Sportsman Club did not comply with the Sport Shooting Ranges Act, the prosecutor could not prosecute the Club's members. The trial court thus granted summary disposition in favor of the Cheboygan Sportsman Club.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). This Court likewise reviews de novo questions of statutory construction, with the fundamental goal of giving effect to the intent of the Legislature. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175, amended on other grounds 468 Mich 1216 (2003). The goal of statutory interpretation is to determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597;

-2-

664 NW2d 705 (2003).  If the language is unambiguous, "the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case." *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159-160; 645 NW2d 643 (2002).  However, "the provisions of a statute should be read reasonably and in context." *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012).  Even if a trial court fails to address an issue, it is preserved for appeal and thus proper for this Court to consider if it was raised before the trial court and is pursued on appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

We first conclude that the trial court erred in applying the Sport Shooting Ranges Act.  It is inapposite not because it is more or less specific, but because it simply has no relevance to the facts at issue in this case.  The Act gives shooting ranges that "conform to generally accepted operation practices" several immunities.  In ostensibly relevant part, under MCL 691.1542, such ranges are immune to "civil liability or criminal prosecution in any matter relating to noise or noise pollution," "an action for nuisance," and an injunction against "the use or operation of a range on the basis of noise or noise pollution," if those ranges had been in compliance with "any noise control laws or ordinances" to which it was subject when it commenced operation.  The threatened criminal liability in the instant matter has nothing to do with noise or nuisance.  Under MCL 691.1542a, such ranges are immune, under certain circumstances, to violations of ordinances.  The threatened criminal liability in the instant matter comes from violations of a statute, not an ordinance.  In any event, the Club *itself* is not being threatened with any criminal liability; rather, the threat of prosecution is to any *individuals* who discharge firearms there.  The Sport Shooting Ranges Act does not confer upon plaintiff any immunity relevant to this matter.

Plaintiff and amicus contend in the alternative that MCL 324.40111(6) was never intended to apply to shooting ranges, but rather to hunters.[2]  There is a considerable amount of evidentiary support for this contention in the history and context of the statute.

The first predecessor statute, MCL 312.10b, was enacted by 1968 PA 61, which amended what was then the Game Law of 1929, and it read as follows:

**312.10b  Hunting safety zone; hunting prohibited; exceptions**

Sec 10b.  (1)  For the purpose of this section, "safety zone" means any area within 150 yards of any occupied dwelling house, residence, or any other building, cabin, camp or cottage when occupied by human beings or any barn or other building used in connection therewith.

(2)  No person, other than the owner, tenant or occupant, shall shoot or discharge any firearm or other dangerous weapon, or hunt for or shoot any wild

---

[2] Our dissenting colleague would decline to address this issue because the trial court failed to do so.  As noted, the trial court's failure to consider a matter that was properly raised by the parties is immaterial to whether an issue was preserved for our consideration.  *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

bird or wild animal while it is within such safety zone, without the specific permission of the owner, tenant or occupant thereof.

(3) The provisions of this section shall not apply to any landowner, tenant or occupant thereof or their invited guest while hunting on their own property, or to any riparian owner or their tenant or guest while shooting waterfowl lakeward over water from their upland [sic] or lakeward from a boat or blind over their submerged soil.

MCL 312.10b has only been mentioned once in any published opinion that we can find, and in that case this Court only observed what is obvious, that "the statute is intended to protect the occupants of, or animals housed in, certain structures . . . " *Holliday v McKeiver*, 156 Mich App 214, 217; 401 NW2d 278 (1986).

However, then Michigan Attorney General Frank J. Kelly issued an opinion interpreting MCL 312.10b and concluded, in relevant part, that the Game Law was intended by the Legislature to regulate hunting and MCL 312.10b in particular was intended to regulate "the control and limitation of the discharge of weapons in the hunting and taking of wild birds and wild game and not the discharge of weapons in target practice activities." OAG, 1981-1982, No. 5960, p 322 (August 18, 1981). Consequently, the 150-yard "safety zone" was inapplicable to landowners engaging in target practice on their own property. *Id*.[3] The statute explicitly exempted hunting activities on the landowner's own property.

---

[3] We note with interest that portions of former MCL 312.10 forbidding transportation or possession in an automobile of uncased or loaded firearms were supposedly declared unconstitutional for failing to explicitly specify that they applied only to game areas. In response, the Legislature enacted 1980 PA 451, which, *inter alia*, amended then-MCL 312.10(1)(g) and (h) to explicitly "specify that the regulations covering the transportation of hunting weapons applied only in areas 'frequented by wild birds and wild animals.'" See House Legislative Analysis, SB 1200 and 1201, September 29, 1980; see also House Legislative Analysis, HB 4688, February 10, 1982. According to the legislative analysis, the failure to so specify caused "several courts" to find those portions of the statute unconstitutional "because their prohibitions extend beyond the purpose of the act's title, causing the law to embrace more than one object." See Const 1963, Art 4, § 24. Such a holding would be consistent with a determination that the Game Act generally applied only to hunting. Unfortunately, the legislative analysis did not specify which "several" court cases so held, and we have been unable to discover them despite engaging in a diligent and exhaustive search. Criminal statutes now exist that accomplish the same purpose. See *People v Quinn*, 440 Mich 178, 192 n 16; 487 NW2d 194 (1992), citing MCL 750.227c and MCL 750.227d.

Pursuant to 1988 PA 256, former MCL 312.10b was repealed. Former MCL 300.269. In the same public act, the Legislature enacted, *inter alia*, former MCL 300.262(5), which was almost identical to the present-day MCL 324.40111(6).[4] This revised statute now reads:

> An individual shall not hunt or discharge a firearm within 150 yards of an occupied building, dwelling, house, residence, or cabin, or any barn or other building used in connection with a farm operation, without obtaining the written permission of the owner, renter, or occupant of the property.

1988 PA 256 was the former Wildlife Conservation Act, MCL 300.251 *et seq*. Its preamble stated that its purpose was, in pertinent part, "to provide for the conservation of animals and the method and manner in which animals may be taken in this state." The legislative history of 1988 PA 256 further reflects that the intention of the Legislature was essentially to recodify the Game Law of 1929, which had been amended extensively, with a less "patchwork" regime of game laws. See Senate Fiscal Agency Bill Analysis, SB 374, July 12, 1988.

The Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*, was enacted by 1994 PA 451. Its preamble provided that it was:

> to protect the environment and natural resources of the state; to codify, revise, consolidate, and classify laws relating to the environment and natural resources of the state; to regulate the discharge of certain substances into the environment; to regulate the use of certain lands, waters, and other natural resources of the state; to protect the people's right to hunt and fish; to prescribe the powers and duties of certain state and local agencies and officials; to provide for certain charges, fees, assessments, and donations; to provide certain appropriations; to prescribe penalties and provide remedies; and to repeal acts and parts of acts.

Shortly thereafter, the Legislature enacted a series of public acts recodifying a long list of "current natural resources management statutes concerning wildlife conservation, recreation, habitat protection, and environmental issues . . . by inserting them into the NREPA." Senate Fiscal Agency Bill Analysis, HB 4348-4351 and 4385, April 6, 1995. Among many other provisions, 1995 PA 57 recodified 1988 PA 256 as Part 401 of the NREPA, under "wildlife conservation." *Id*. Thus, MCL 300.262(4) became MCL 324.40111(4), which is now at MCL 324.40111(6) with irrelevant changes.[5]

---

[4] Former MCL 300.262(5), which was moved without any other change to MCL 300.262(4) by 1990 PA 276, referred to "a person" rather than "an individual" and had an additional comma after the words "farm operation." Although changes to a statute are often presumed to change its meaning, we think it obvious that these two changes were at most intended merely as clarification. See *Detroit Edison Co v Janosz*, 350 Mich 606, 614; 87 NW2d 126 (1957). Consequently, we will in the remainder of this opinion treat these two minor differences as being effectively nonexistent.

[5] See footnote 4, *supra*.

It has always been the law that statutes must be constructed in such a way as to reflect the intention of the Legislature as derived from a strict reading of the language of the statute at issue, but at the same time, that language must not be "construed so strictly as to defeat the obvious intention of the legislature." *United States v Wiltberger*, 18 US 76, 95-96; 5 L Ed 37; 5 Wheat 76 (1820). As noted, "the provisions of a statute should be read reasonably and in context," *McCahan*, 492 Mich at 739, particularly "in the context of the entire legislative scheme." *Madugula v Taub*, ___ Mich ___, ___; ___ NW2d ___ (2014), slip op at 9. Part of that context is the titles of their acts, and they may not exceed the scope of those titles. *Bankhead v McEwan*, 387 Mich 610, 613-615; 198 NW2d 414 (1972), relying on Const 1963, art 4, § 24. Further context is any other statutes that are *in pari materia*, relating to the same common purpose, which should be read together. See *Apsey v Memorial Hosp*, 477 Mich 120, 129 n 4; 730 NW2d 695 (2007). An act's preamble is not itself authority of any sort, but it is properly considered to assist in determining the act's purpose and scope. *Malcolm v City of East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991). Although legislative analyses are of very little value in reading a statute, they have some value to courts as casting light on the reasons that the Legislature may have had and the meaning they intended for an act. *Kinder Morgan Michigan*, *LLC v City of Jackson*, 277 Mich App 159, 170; 744 NW2d 184 (2007).

Our dissenting colleague takes issue with our approach to understanding MCL 324.40111(6). To some extent, we can appreciate our colleague's concerns: in particular, we agree with our dissenting colleague that if MCL 324.40111(6) is read strictly in isolation, that provision does not itself provide any exceptions for hunting on one's own property. It is true that "or" is a disjunctive term, and were we to consider the statute without regard to its history or its surrounding statutory framework, our colleague's conclusion would be inescapable. However, as discussed, statutory provisions must be read in context, which we do not believe constitutes "ignoring" any portion thereof. Beyond that, our colleague's analysis of legislative analysis is an impressive academic exercise. We do not share our colleague's departure from established precedent that recognizes that collective entities can be, through simple and well-understood principles of group dynamics, effectively discrete entities unto themselves and subject to analysis in their own right. We decline to depart from that precedent, and we further decline to give in to despair when faced with the ancient fact, adequately addressed by many generations of our predecessors, that legislative bodies in representative democracies are made up of individuals and, no matter how contentious they might be, ultimately become more than the sum of their parts.

Were we to disregard any established legal principle that could conceivably be thought of—inaccurately in this case, we believe—as a "fiction," the result would be chaos. In any event, we also decline to adopt our colleague's approach of analyzing MCL 324.40111(6) divorced from its context. Considering statutes in the contexts of the remainder of any cohesive statutory provisions of which they are a part and of their history are also cherished principles of statutory analysis. *Robinson v City of Lansing*, 486 Mich 1, 15-16; 782 NW2d 171 (2010); *Arrowhead Development Co v Livingston Co Road Comm*, 413 Mich 505, 516; 322 NW2d 702 (1982). Ultimately, the goal of *all* such principles is to determine the intent of the Legislature, and an overly mechanical application of such principles can be counterproductive. See *Dagenhardt v Special Machine & Engineering*, *Inc*, 418 Mich 520, 544 n 24; 345 NW2d 164 (1984). We prefer an organic approach to what is really an organic challenge.

-6-

It is inescapable that MCL 324.40111 is part of the NREPA, and for the entire history of it and its predecessors the relevant provision has been a small part of a large statutory framework governing hunting, which successively came to be incorporated into increasingly even-larger statutory frameworks governing natural resources of one kind or of all kinds. It has never been part of a general penal statutory framework or a framework governing firearms. Pursuant to MCL 324.40118(1), which makes violation of MCL 324.40111 a misdemeanor, any issued permit is also to be revoked, further indicating that the statute at issue is part of a hunting regulation scheme. We are of the opinion, as was Attorney General Frank J. Kelly regarding the predecessor statute, that the context of MCL 324.40111 is an inextricable part thereof. Furthermore, although changes to a statute are presumed to reflect an intention to change meaning, that presumption is not a strong one and will not overcome other indications to the contrary. See *People v Harrison*, 194 Mich 363, 370; 160 NW 623 (1916). Here, it is clear that every relevant change made to the statute since its inception was for the purpose of recodification or streamlining.

In short, we are convinced that the 1981 opinion of Attorney General Frank J. Kelly regarding former MCL 312.10b was correct at the time and continues to be correct regarding the modern version thereof, MCL 324.40111: "[t]he focus of this section is the hunting and taking of wild birds and wild animals" and is intended to "control and limit[] the discharge of weapons in the hunting and taking of wild birds and wild game and not the discharge of weapons in target practice activities."[6] We note also that although courts cannot consider the wisdom, fairness, or sensibility of a statute when evaluating its meaning, we believe any other conclusion would be not only somewhat nonsensical given the statute's inclusion in the NREPA, but also deeply unjust to a business and individuals who have apparently undertaken to comply with the law and whose actions would become illegal *because of the unilateral act of someone else who was entirely aware of plaintiff's activities and even participated therein*. Put simply, it shocks our sense of fundamental fairness for the Legislature to have effectively handed Watts the sole power to decide whether plaintiff and its members could continue their historical use of their property the moment he became tired of them doing so. In conclusion, although the trial court erred in finding the Sport Shooting Ranges Act applicable, the trial court correctly found plaintiff and its members immune to prosecution for violating MCL 324.40111 under the facts alleged.

We emphasize that our holding today does *not* immunize property owners from potential criminal or civil liability for discharging firearms on their own property merely because the discharge was for some purpose other than hunting. For example, the letter written by the Cheboygan County Prosecuting Attorney regarding plaintiff's club referred not only to MCL 324.40111 but also to the possibility of criminal liability for recklessly discharging a firearm contrary to MCL 752.863a, a general penal statute. The latter statute was not made a part of the instant litigation, and we have not been asked to render an opinion as to its possible applicability to the facts at bar, so we do not. However, we do note that nothing in our opinion today necessarily precludes a potential criminal proceeding against any member of plaintiff's Club, or

---

[6] Our Court has held that "while not binding on this Court, [Attorney General Opinions] can be persuasive authority." *People v Woolfolk*, 304 Mich App 450, 492; 848 NW2d 169 (2014).

indeed any other person, under that or any other statute we have not explicitly discussed. We hold *only* that MCL 324.40111 applies to hunting contexts and not to target practice contexts, so the act of conducting target practice shooting on plaintiff's premises does not violate MCL 324.40111. We express no opinion, and none should be implied, as to whether any of the activities on plaintiff's premises are either permitted or prohibited by any other statute or law.

Affirmed.

/s/ Amy Ronayne Krause
/s/ E. Thomas Fitzgerald