DALE v BETA-C, INC

Docket No. 186731. Submitted December 17, 1996, at Detroit. Decided
December 16, 1997, at 9:10 A.M. Leave to appeal sought.

Lee and Karen Dale brought an action in the Wayne Circuit Court
against Beta-C, Inc., doing business as Detroit Roller Wheels, seek-
ing damages for injuries sustained by plaintiff Lee Dale when he
collided with another skater, fell down, and fractured his ankle
while skating at a roller-skating center owned by the defendant.
The plaintiffs alleged that the collision and fall resulted from the
failure of the defendant to supply or maintain the toe stopper on
the skates that Lee Dale had rented and that the failure to maintain
the toe stopper was a breach of the requirements of subsections b
and c of § 3 of the Roller Skating Safety Act (RSSA), MCL
445.1723(b), 445.1723(c); MSA 18.485(3)(b), 18.485(3)(c), which
requires roller-skating center operators to comply with the safety
standards published by the Roller Skating Rink Operators Associa-
tion. The court, John H. Gillis, Jr., J., granted summary disposition
for the defendant on the basis that plaintiff Lee Dale's collision and
fall were dangers inherent in the sport of roller skating and were
risks that he had assumed by using the facility and that, accord-
ingly, the claim was barred by § 5 of the RSSA, MCL 445.1725; MSA
18.485(5). The plaintiffs appealed. The Court of Appeals, CAVANAGH,
P.J., and REILLY and C. D. CORWIN, JJ., affirmed in a per curiam opin-
ion released on May 6, 1997, but indicated that they were doing so
only because they were required to follow the holding in *Skene v
Fileccia*, 213 Mich App 1 (1995). 223 Mich App 802 (1997). By its
order of May 20, 1997, the Court of Appeals vacated the May 6
opinion and convened a special panel pursuant to Administrative
Order No. 1996-4 to resolve the conflict between the position taken
by the panel in the *Dale* opinion and the position taken by the
panel in the *Skene* opinion. 223 Mich App 801 (1997).

The conflict resolution panel of the Court of Appeals *held*:

1. The *Skene* panel held that the assumption of risk language of
the first sentence of § 5, whereby a person who participates in
roller skating "accepts the danger that inheres in that activity inso-
far as the dangers are obvious and necessary," when read with the
language of the second sentence of § 5 that provides that among
the dangers that are included within the assumption of risk are

injuries resulting from collisions with other roller skaters and injuries resulting from falls, "renders the reasonableness of . . . the roller-skating rink operator's behavior irrelevant" and, accordingly, that any contrary conclusion would render the language of § 4 "surplusage and nugatory." The prior *Dale* panel, while constrained to affirm the decision of the trial court on the basis of the holding in *Skene*, opined that the holding in *Skene* rendered nugatory the language of § 6, MCL 445.1726; MSA 18.485(6), which provides that a roller-skating rink operator who violates the provisions of the RSSA is liable in a civil action for damages resulting from such a violation. The prior *Dale* panel further suggested that the language of the final clause of the second sentence of § 5—"which are not otherwise attributable to the operator's breach of his or her common law duties"—applied not only to the third of the listed dangers, injuries involving objects or artificial structures properly within the intended path of skaters, but also to the other two listed dangers, injuries resulting from collisions with other skaters or spectators and injuries from falls.

2. The language of the RSSA and a review of its legislative history evidences a clear intent by the Legislature to balance the risks assumed by the skater with the responsibilities of rink operators. Section 3 of the RSSA expressly states that operators must maintain equipment in compliance with the safety standards published by the Roller Skating Rink Operators Association and § 6 makes operators liable for damages resulting from a violation of the RSSA. Clearly, these provisions indicate that the Legislature did not intend the assumption of risk language of § 5 to provide rink operators with absolute immunity from liability, as is suggested by the holding of the *Skene* panel. To the extent that the opinion in *Skene* may be read to hold that the assumption of risk language provides to rink operators absolute immunity from liability for injuries to skaters resulting from collisions with other skaters or from falls, it is overruled.

3. While the prior *Dale* panel properly assessed the flaws inherent in the *Skene* panel's construction of § 5, it introduced its own misconstruction of the meaning and intent of § 5 by suggesting that the final clause of the second sentence of that section applies to all three of the listed causes of injuries that are included among the dangers for which a skater accepts the risk. A syntactical analysis of the second sentence of § 5 and a review of the legislative history clearly shows that the final clause of that sentence relates only to its immediate antecedent, "injuries which involve objects or artificial structures properly within the intended travel of the roller skater." Thus, the general assumption of risk undertaken by a

skater in accordance with the language of the first sentence of § 5 is limited by an operator's breach of a common-law duty only with respect to injuries involving objects or artificial structures properly within the intended travel of the skater.

4. Because liability can arise under § 6 of the RSSA for failure to comply with the safety standards of the Roller Skating Rink Operators Association, and because the plaintiff has alleged in his pleadings and has stated in his deposition testimony that the skates that were rented to him by the defendant were missing toe stoppers and the defendant has conceded that such an omission would be a violation of the published safety standards, there exists a genuine issue of material fact concerning whether the plaintiff is entitled to damages under § 6 of the RSSA. Accordingly, the order of summary disposition for the defendant must be reversed, and the matter must be remanded to the trial court for further proceedings.

Reversed and remanded.

NEGLIGENCE — ROLLER SKATING SAFETY ACT — ASSUMPTION OF RISK — INDUSTRY SAFETY STANDARDS.

The provision of the Roller Skating Safety Act that provides that a person who participates in roller skating accepts the dangers inherent in that activity to the extent that the dangers are obvious and necessary does not provide absolute immunity to a roller-skating rink operator for its failure to comply with statutorily incorporated industry safety standards; the Roller Skating Safety Act clearly provides a cause of action for damages for roller skaters who are injured as a result of the failure of an operator of a roller-skating center to comply with published industry safety standards (MCL 445.1723, 445.1725, 445.1726; MSA 18.485[3], 18.485[5], 18.485[6]).

*Mark Granzotto* and *Mayer B. Gordon,* for the plaintiffs.

*Anselmi, Mierzejewski & Ledwidge, P.C.* (by *Kurt A. Anselmi*), for the defendant.

Before: MACKENZIE, P.J., and HOOD, SAWYER, DOCTOROFF, GRIFFIN, BANDSTRA, and HOEKSTRA, JJ.

GRIFFIN, J. Pursuant to Administrative Order No. 1996-4,[1] this special panel was convened to resolve the conflict between the prior vacated opinion in this case, *Dale v Beta-C, Inc*, 223 Mich App 802; 566 NW2d 640 (1997), and *Skene v Fileccia*, 213 Mich App 1; 539 NW2d 531 (1995). In accordance with Administrative Order 1996-4, the prior *Dale* panel was required to follow the precedent of *Skene*. Were it not for the precedential effect of the prior published decision, the prior *Dale* panel would have reversed the decision of the lower court.

Following an en banc order[2] invoking the conflict resolution procedure, this case was reheard by this special panel. After due consideration, we reverse the decision of the circuit court, but on a ground different from that upon which either prior opinion relied.

I

The present conflict arises out of contradictory interpretations of the Roller Skating Safety Act (RSSA), MCL 445.1721 *et seq.*; MSA 18.485(1) *et seq.*, which provides in pertinent part:

> Each roller skating center operator shall do all of the following:

> *          *          *

> (b) Comply with the safety standards specified in the roller skating rink safety standards published by the roller skating rink operators association, (1980).

---

[1] MCR 7.215(H) is the successor to Administrative Order 1996-4 and its predecessors, Administrative Order No. 1994-4 and Administrative Order No. 1990-6.

[2] *Dale v Beta-C, Inc*, 223 Mich App 801 (1997).

(c) Maintain roller skating equipment and roller skating surfaces according to the safety standards cited in subdivision (b). [MCL 445.1723; MSA 18.485(3).]

Each person who participates in roller skating accepts the danger that inheres in that activity insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries that result from collisions with other roller skaters or other spectators, injuries that result from falls, and injuries which involve objects or artificial structures properly within the intended travel of the roller skater which are not otherwise attributable to the operator's breach of his or her common law duties. [MCL 445.1725; MSA 18.485(5).] [3]

A roller skater, spectator, or operator who violates this act shall be liable in a civil action for damages for that portion of the loss or damage resulting from the violation. [MCL 445.1726; MSA 18.485(6).]

In *Skene*, the plaintiff fractured her wrist when she collided with another skater. The plaintiff brought an action for damages, alleging that the defendants (the other skater and the skating center) breached their duties under the RSSA and were liable. The trial court granted summary disposition in favor of the defendants on the basis that the plaintiff had assumed the risk of the dangers inherent in the sport of roller skating. On appeal, this Court affirmed the decision of the lower court, finding that

the statute is clear and unambiguous. By participating in the sport of roller-skating, plaintiff accepted the dangers that inhere in the sport insofar as they are obvious and necessary. MCL 445.1725; MSA 18.485(5). Specifically included within such dangers are "injuries that result from collisions

---

[3] Section 4 of the RSSA, not pertinent to the issue at hand, sets forth the responsibilities of each roller skater. See MCL 445.1724; MSA 18.485(4).

with other roller skaters." *Id.* Because the act is clear and unambiguous, this Court must apply the act as written. . . . Here, plaintiff was injured from an obvious and necessary danger of roller-skating and may not recover damages. [*Skene, supra* at 4.]

In so holding, the *Skene* Court compared the RSSA to the Ski Area Safety Act, MCL 408.321 *et seq.*; MSA 18.483(1) *et seq.*, and concluded that the RSSA, like the Ski Area Safety Act, was "designed to cut down on the liability of owners and operators for injuries that result from the inherent dangers of the sports as opposed to the negligence of area operators." *Skene, supra* at 6. Relying on cases decided under the Ski Area Safety Act, the *Skene* Court concluded that § 5 of the RSSA, the assumption of risk clause, "renders the reasonableness of the roller-skaters' or the roller-skating rink operator's behavior irrelevant." *Id.* at 7. A contrary conclusion would, according to the Court, render § 5 "surplusage and nugatory." *Id.* at 5.[4]

In the present case, plaintiff also seeks damages for injuries sustained in an accident at a roller-skating rink. However, the circumstances differ from those in

---

[4] In a subsequent decision, *Weisman v U S Blades, Inc*, 217 Mich App 565; 552 NW2d 484 (1996), the plaintiff sought damages for injuries sustained when, after nearly colliding with another skater, he hit a tunnel wall while he was in-line skating at the defendant's rink. The trial court granted summary disposition for the defendant, and this Court affirmed. Citing *Skene*, the Court held that the near collision with another skater and the collision with the wall were obvious and necessary dangers of roller skating. However, in rejecting the plaintiff's additional argument that the defendant was liable under the RSSA because the wall of the tunnel was an artificial structure not properly within his travel, the Court did go beyond the holding of *Skene* to recognize that "[t]he Roller Skating Safety Act imposes liability for a violation of the act only if the damages result from the violation." *Weisman, supra* at 570. Because the plaintiff failed to allege specific facts and present evidence showing that his injuries resulted from the defendant's failure to comply with the act, the Court held that summary disposition was appropriate.

*Skene.* Plaintiff Dale was roller-skating at defendant's rink when another skater cut across the rink in plaintiff's direction. Plaintiff attempted to stop by using the toe stopper on his right skate but received no reaction. Plaintiff then tried to change direction to avoid the other skater but collided with her, fell to the floor, and fractured his ankle. In his complaint, plaintiff alleges that defendant's alleged failure to supply or maintain a toe stopper on the rental skates is a breach of roller-skating rink standards and therefore constitutes a violation of subsections b and c of § 3 of the RSSA. The lower court granted summary disposition in favor of defendant pursuant to MCR 2.116(C)(10) on the basis that plaintiff's collision and fall were an assumed risk and, therefore, a claim barred by operation of § 5 of the RSSA.

On appeal, the prior *Dale* panel concluded that genuine issues of material fact existed with respect to whether plaintiff's injuries were caused, at least in part, by the absence of toe stoppers on his rental skates. However, the panel was obligated to follow the precedentially binding *Skene* decision, which required affirmance. The prior *Dale* panel interpreted *Skene's* holding as follows:

> [I]f injuries result from a collision with another roller skater or from a fall, the operator will not be liable, regardless of whether the operator complied with the safety standards as required under the act. Injuries from a fall, like injuries from collisions, are included in § 5. Therefore, the holding in *Skene* provides broad immunity for operators. For example, under the safety standards an operator is required to regularly check the mechanical condition of its rental skates and inspect the skating surfaces before each session. If an operator fails to inspect the floors, and a skater falls because of a dangerous condition on the floor

surface, the operator will not be liable because the injury resulted from a fall. Similarly, if the operator fails to regularly check the rental skates and provides skates that are in poor mechanical condition, no liability will attach if the skater is injured by falling, even if the fall was directly caused by the mechanical condition of the skates. According to *Skene*, because a skater assumes the risk of injuries from falls under § 5, "the reasonableness of the roller-skating rink operator's behavior" is "irrelevant." *Skene, supra* at 7. [*Dale, supra* at 803.]

The prior *Dale* panel opined that *Skene's* construction of the RSSA rendered § 6 nugatory. The *Dale* panel observed:

"The inclusion of this provision [§ 6] indicates that the Legislature did not intend for operators to be absolutely· immune. . . . We cannot conceive any circumstances where an operator would be accountable to a skater for violating the statutory duty to maintain roller skating equipment and surfaces, § 3(c), if the operator's behavior is deemed 'irrelevant' when the violation results in injuries from a fall or a collision." [*Id.* at 805.]

However, because it was bound to follow *Skene, supra,* the prior *Dale* panel reluctantly affirmed summary disposition in favor of defendant.

II

Resolution of the conflict that has arisen concerning the proper construction of the RSSA requires that we invoke the fundamental rule of statutory construction: to ascertain the purpose and intent of the Legislature. *Farrington v Total Petroleum,* Inc, 442 Mich 201, 212; 501 NW2d 76 (1993). Once discovered, the Legislature's intent must prevail, any existing rule of construction to the contrary notwithstanding. *In re Certified Question,* 433 Mich 710, 722; 449 NW2d 660

(1989). When ascertaining legislative intent, a court must examine the language of the statute itself. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the language is clear and unambiguous, judicial construction is neither required nor permitted, and a court must apply the statute as written. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). However, if reasonable minds could differ regarding the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer*, 180 Mich App 82, 84; 446 NW2d 593 (1989). When construing a statute, a court should presume that every word has some meaning and should avoid a construction that renders a statute, or any part thereof, surplusage or nugatory. *Frank v William A Kibbe & Associates, Inc*, 208 Mich App 346, 350-351; 527 NW2d 82 (1995).

The RSSA was enacted to address the concerns with the increasing frequency of lawsuits filed against skating rink operators and the corresponding rise in insurance premiums for such facilities. The roller rinks sought legislation "that would clarify that skaters have certain duties and must assume the risks inherent in the sport, while rinks have certain duties to observe safety standards." House Legislative Analysis, SB 134, November 29, 1988.

The *Skene* Court properly found that collisions among roller skaters are obvious and necessary dangers assumed by a roller skater pursuant to § 5 of the RSSA. The facts in *Skene* warranted the conclusion that the plaintiff's injuries were the result of an assumed risk inherent in the sport. However, although this result was appropriate in *Skene*, which involved a simple collision between roller skaters, we agree with

the prior *Dale* panel that the *Skene* holding is overly broad and problematic when applied to more complicated circumstances such as the instant case, in which the plaintiff also alleges that defendant supplied defective skating equipment. As the prior *Dale* panel aptly noted, the effect of the *Skene* Court's conclusion that an operator's behavior is irrelevant if an injury occurs because of a collision

> is to provide immunity to operators for virtually any suit brought by a skater. If the Legislature intended such a result, it would not have included the limiting language in § 5, would not have set forth the duties in § 3, and, would not have included in § 6, an "operator" among those who "shall be liable" for damages resulting from violations of the act. [*Dale, supra* at 805.]

An integral feature of the RSSA is the balancing of risks assumed by the skater with the responsibilities of the operator. Section 3 of the RSSA expressly states that operators are liable for failure to "maintain roller skating equipment . . . according to the safety standards [published in 1980 by the Roller Skating Rink Operators Association]."[5] Further, § 6 of the statute provides that an "operator who violates this act *shall be liable in a civil action for damages* for that portion of the loss or damage resulting from the violation." (Emphasis added.) Certainly, the inclusion of these sections in the statute indicates that the Legislature did not intend to provide absolute immunity to rink operators. However, the *Skene* Court found

---

[5] The standards provide in pertinent part that roller-skating supervisors must "[w]atch skates for bad stops, nails or other protrusions" and further require that "[s]kate rentals should be checked on a regular basis for good mechanical condition."

exactly that, thereby rendering § 3 and § 6 nugatory. We now overrule that portion of the *Skene* decision.

In order to preclude such an unintended result and to preserve the legislative purpose underlying the RSSA, the assumption of risk provision of § 5 must be read in conjunction with the duties of operators set forth in § 3 and the creation of civil liability for operators as set forth in § 6. Reconciliation of these provisions leads us to hold that a skater does not assume the risk of an operator violating the duties prescribed under the act. If a violation of § 3 of the RSSA is alleged and proved, then pursuant to § 6 the operator "who violates this act shall be liable in a civil action for damages for that portion of the loss or damage resulting from the violation." MCL 445.1726;    MSA 18.485(6).

While we share the prior *Dale* panel's assessment of the flaws inherent in the *Skene* Court's construction of § 5, we conversely conclude that the *Dale* panel misconstrued the final phrase of § 5, which refers to an operator's breach of his common-law duties. The prior *Dale* panel questioned the analogy made in *Skene* to the Ski Area Safety Act[6] and the resultant construction of § 5 of the RSSA. Noting that the Ski Area Safety Act, unlike the RSSA, does not contain a

---

[6] We are in general agreement with the prior *Dale* panel that although the Ski Area Safety Act served as a model for the RSSA, any analogy drawn between the two statutes must be viewed with caution and is not necessary under the present circumstances. The acts deal with two separate and distinct sports, obviously giving rise to different concerns, and the language and the structure of the statutes are dissimilar enough to warrant careful scrutiny before a comparison is made.

clause that limits the risks assumed by skiers,[7] the prior *Dale* panel stated:

> In quoting the pertinent provisions of the Roller Skating Safety Act, *Skene* omitted quoting and discussing a critical portion at the end of § 5, "which are not otherwise attributable to the operator's breach of his or her common law duties." This clause significantly limits the risks that skaters assume under the statute. *Thus, a skater does not assume the risk of all collisions, falls, and so forth, but rather, only those that are "not otherwise attributable to the operator's breach of his or her common law duties."* [*Dale, supra* at 804 (emphasis added).]

The prior *Dale* panel apparently would hold that a participant accepts no risks if an operator in any way violates a common-law duty. In order to reach this conclusion, the prior *Dale* panel has read the limiting language in the last phrase of the second sentence of § 5, emphasized above, as modifying the entire content of § 5 and not just the risk ("injuries which involve objects or artificial structures . . .") that immediately precedes the phrase. This interpretation is not consonant with the syntax or the legislative history of § 5.

From a syntactical point of view, the first sentence of § 5 establishes that participants assume the risks

---

[7] Section 22(1) of the Ski Area Safety Act, MCL 408.342(2); MSA 18.483(22)(2), provides:

> Each person who participates in the sport of skiing accepts the dangers that inhere in that sport insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries which can result from variations in terrain; surface or subsurface snow or ice conditions; bare spots; rocks, trees, and other forms of natural growth or debris; collisions with ski lift towers and their components, with other skiers, or with properly marked or plainly visible snow-making or snow-grooming equipment.

of "obvious and necessary" dangers. The second sentence further defines (by way of example and not limitation) three types of dangers that are "obvious and necessary." These examples are separated by commas. Proper syntax provides that commas usually set off words, phrases, and other sentence elements that are parenthetical or independent. The punctuation in § 5 suggests that the three examples are independent of and do not modify each other. Moreover, it is a general rule of statutory, as well as grammatical, construction that a modifying clause is confined to the last antecedent unless a contrary intention appears. *Weems v Chrysler Corp*, 448 Mich 679, 700; 533 NW2d 287 (1995); *Kales v Oak Park*, 315 Mich 266; 23 NW2d 658 (1946). Applying the rule to this case, it is the third example only, "injuries which involve objects or artificial structures properly within the intended travel of the roller skater," that is modified by the limiting language of the final phrase. Thus, unlike our predecessor panel, we do not construe the last phrase of § 5 as broadly limiting the risks that a skater assumes under the statute. Instead, we hold that the only enumerated risk that is limited by an operator's breach of a common-law duty is for injuries "which involve objects or artificial structures properly within the intended travel of the roller skater."

A review of the legislative history indicates that as originally submitted, the RSSA did not contain the limiting phrase at the end of the second sentence in § 5. During the course of the hearing of the House Judiciary Committee regarding the bill, however, the limiting language was added to address concerns that § 5 seemed to provide an immunity to rink operators for

injuries sustained as a result of objects not properly present on or about the physical premises (such as defects in the structure of the building). Consequently, as the House Legislative Analysis, SB 134, November 29, 1988, demonstrates:

> The House Judiciary committee adopted amendments that, among other things . . . specified that the accepted dangers included injuries involving objects only to the extent that they were not otherwise attributable to the operator's breach of common law duties.

We, therefore, reiterate that pursuant to § 5, a participant assumes the risks of obvious and necessary dangers inherent in the sport of roller skating. However, the skater does not assume the risk of an operator violating the prescribed duties under the act. With the exception of injuries that involve objects or artificial structures properly within the intended travel of the roller skater, the skater's assumption of risk is neither limited nor nullified by an operator's breach of a common-law duty. Finally, a participant's sole recourse against a roller-skating rink operator is pursuant to the RSSA.

III

As noted above, plaintiff in the present case alleges that his injuries were caused by defendant's failure to provide a toe stopper on the rental skates in violation of subsections b and c of § 3 of the RSSA. Although the issue was not argued or addressed to the lower court, defendant's counsel conceded in oral argument before this Court that renting roller skates that do not have toe stoppers violates the safety standards published by the Roller Skating Rink Operators Association. See footnote 5, *supra* at 66, for the text of those stan-

dards. At this preliminary stage, however, it has not been admitted or established that the skates in question were missing toe stoppers. In light of our holding that an operator's compliance with § 3 of the statute is indeed a relevant consideration in assessing liability, we conclude that plaintiff, by his deposition testimony, has raised a genuine issue of material fact with respect to whether his injuries were caused, in whole or in part, by defendant's alleged violation of the RSSA. *Radtke v Everett*, 442 Mich 368, 373; 501 NW2d 155 (1993). In addition, there are genuine issues of material fact regarding plaintiff's alleged comparative negligence. Therefore, we reverse the order granting summary judgment in favor of defendant and remand for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.