# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF HUNTINGTON WOODS and CITY OF PLEASANT RIDGE,

Plaintiffs/Counter-Defendants-Appellants,

v

CITY OF OAK PARK,

Defendant/Counter-Plaintiff-Appellee,

and

45TH DISTRICT COURT,

Defendant/Appellee.

FOR PUBLICATION
June 11, 2015
9:15 a.m.

No. 321414
Oakland Circuit Court
LC No. 2013-135842-CZ

Before: JANSEN, P.J., and SAWYER and FORT HOOD, JJ.

PER CURIAM.

Plaintiffs city of Huntington Woods and city of Pleasant Ridge appeal by leave granted the trial court's order granting in part defendant city of Oak Park's motion for summary disposition pursuant to MCR 2.116(C)(10). Plaintiffs argue on appeal that the trial court erroneously concluded (1) that plaintiffs have a statutory duty to contribute to the costs of operating the 45th District Court, and (2) that the city of Oak Park does not have a statutory duty to disburse to plaintiffs a portion of fees assessed against criminal defendants in 45th District Court proceedings and allocated to funds for building improvements and retiree health care benefits. We affirm.

## I. HISTORY OF THE DISTRICT COURT ORGANIZATION

Before July 1, 2012, the 45-B District Court served the cities of Huntington Woods, Pleasant Ridge, and Oak Park, and Royal Oak Township. Effective July 1, 2012, the Legislature abolished the 45-B District Court and established in its place the 45th District Court, also serving the cities of Huntington Woods, Pleasant Ridge, and Oak Park, and Royal Oak Township. MCL 600.8123(4). The 45th district is a "district of the third class," meaning that it is "a district

-1-

consisting of 1 or more political subdivisions within a county and in which each political subdivision comprising the district is responsible for maintaining, financing and operating the district court within its respective political subdivision except as otherwise provided in this act." MCL 600.8103(3). In third-class districts in which the district court does not sit in each political subdivision within the district, one-third of specified fines and costs are to be paid to the non-seating political subdivision whose law was violated. MCL 600.8379(1)(c).

Defendants maintain that the 45th District Court and its predecessor were historically underfunded, almost from the time of the 45-B District Court's inception. In 1983, the Oak Park City Council passed a resolution requesting plaintiffs to provide court facilities within each of their political subdivisions, or, alternatively, to enter into an agreement with Oak Park to share expenses of maintaining, financing, and operating the 45-B District Court, which was located within Oak Park's political subdivision. Plaintiffs did not accept either proposal.

In 1995, the Oak Park City Council discussed the 45-B District Court's plan to add a $5 charge per ticket to cover the cost of including district court retirees in Oak Park's retiree health care plan. The council also discussed increasing "fees" or "fines" to fund construction of a new court facility. In September 1995, the State Court Administrative Office (SCAO) issued a report detailing the inadequacies of the Oak Park court facilities. These included noncompliance with current building standards for occupancy and fire safety, and inaccessibility of areas of the building for the disabled. Oak Park created a municipal building construction capital fund to account for expenditures made to construct a new district court building. This would be funded by a $5 per ticket charge on fines levied by the 45-B District Court. Oak Park also created an internal service fund to fund medical benefits for 45-B District Court retirees. The revenues were collected through an additional $5 per ticket charge added to violation fees. In 2007, the Oak Park City Council unanimously passed a resolution to increase the per ticket levies for the building fund and the retiree health plan fund from $5 to $10. The resolution also imposed $100 in costs for certain misdemeanors, to be allocated for the building fund.

In fiscal year (FY) 2012-2013 (beginning July 1, 2012), the 45th District Court distributed one-third of the building fund and retiree health care fund assessments to plaintiffs, in the same manner that other costs and fines are distributed. Defendants apparently regard this distribution as an error. In October 2012, SCAO issued a report in which it found that there was no agreement in place for distribution of fines and costs to political subdivisions other than Oak Park. The report states:

> The court distributed court costs, with the exception of court costs titled as operational costs, using the method of one-third to the political subdivision whose ordinance was violated and two-thirds to the city of Oak Park during the review period. It should be noted that in fiscal year 2013, the court started distributing the operational costs using the method that was previously used for all other court costs.

The SCAO report reviewed the history of the collection of court costs, beginning in August 1995. The court used an OPCS cash code for receipting these costs. From FY-1996 to FY-2012, the entire amount of cash received under these codes was distributed to Oak Park, which allocated the distributions to the building fund and retiree healthcare fund. Beginning in May

2007, the 45-B District Court began collecting court costs on misdemeanor violations, using an OPBF cash code for receipting the funds. For FY-2007 through FY-2012, the entire amount receipted under the OPBF cash code was distributed to Oak Park. SCAO calculated the amounts of court costs collected from violations occurring in plaintiffs' political subdivisions, and distributed to Oak Park under the OPCS and OPBF codes, for the period from FY 1996 through FY 2012. The report provided more detailed breakdowns of amounts contributed to the building fund and retiree health care fund per fiscal year, for each political subdivision.

In correspondence to Oak Park's city manager, dated May 13, 2013, plaintiffs and Royal Oak Township asserted that Oak Park "knowingly received and retained certain property owned by" plaintiffs, namely "various funds including a building fund, a retiree health care fund, and a serious misdemeanor fund." Plaintiffs demanded return of the funds, and cited SCAO's accounting of $116,696.33 of Pleasant Ridge's property, and $251,021.93 of Huntington Woods's property. In response, the Oak Park City Council passed a resolution declaring that money collected by the 45th District Court and transmitted to the building fund would be used for improvements for the 45th District Court, and money collected and transmitted to the retiree healthcare fund would be used only for the costs of retiree healthcare for district court employees. Defendants did not grant plaintiffs' demand, leading to the instant litigation.

## II. PROCEDURAL HISTORY

Plaintiffs alleged in their complaint that defendants Oak Park and the 45th District Court violated their statutory duty under MCL 600.8379 to disburse one-third of the costs and fees assessed for the building fund and retirees' healthcare fund from 1996 to 2011. Plaintiffs referred to the October 2012 SCAO report finding that Huntington Woods and Pleasant Ridge were entitled to reimbursement of $251,021.93 and $111,696.33, respectively, because defendants wrongfully diverted court costs to the building fund and retiree healthcare fund instead of distributing one-third of these monies to plaintiffs. Plaintiffs asserted a claim for violation of MCL 600.8379 against both defendants, and a claim for statutory conversion under MCL 600.2919a against Oak Park only. Plaintiffs also asserted a claim for breach of contract, alleging that they were third-party beneficiaries of a contract between Oak Park and the 45th District Court, pursuant to which the court collected monies for Oak Park while acting as a trustee of funds generated from fines and costs on tickets and violations that arose in plaintiffs' political subdivisions, and that the court breached its duty to tender the one-third portion of fines and costs owed to plaintiffs. Plaintiffs also asserted a claim for unjust enrichment, alleging that Oak Park retained and used for its own benefit the portion of funds to which plaintiffs were entitled.

Oak Park filed a counter-complaint for declaratory relief. Oak Park asserted that all district funding units were required, pursuant to MCL 600.8104, MCL 600.8621, and MCL 600.8271, to contribute to the expenses of the district court operating within their district. Oak Park sought a declaratory judgment that plaintiffs were required to contribute to the expense of operating the 45th District Court, and that their responsibility to do so was not limited to the amount of fines and costs allocated to Oak Park under the statutory one-third/two-thirds arrangement. In count II, Oak Park alleged that in 2012 and 2013, the court administrator erroneously disbursed to plaintiffs a portion of the fees collected for the building fund and retiree healthcare fund. Oak Park sought a declaratory judgment that these funds were incorrectly

-3-

disbursed, and an order requiring plaintiffs to reimburse Oak Park for the incorrect disbursements.

Oak Park moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Oak Park asserted that the amounts collected for the building and retiree healthcare funds were fees, and therefore not subject to distribution under MCL 600.8379, which required distribution only of imposed fines and costs. Oak Park argued that plaintiffs failed to comply with the statutory mandate of MCL 600.8271(1). Oak Park requested that the trial court declare that plaintiffs were required to share the expense of maintaining, financing, and operating the district court, in accordance with an agreement as authorized by MCL 600.8104(3), or the formula set forth in MCR 8.201. Oak Park also argued that the doctrine of laches or, alternatively, the statute of limitations barred plaintiffs from asserting their entitlement to a one-third disbursement of these fees.

In their response to Oak Park's motion, plaintiffs reviewed the funding history for the district court. In December 1974, the city of Pleasant Ridge passed a resolution approving an arrangement in which the district court would sit in Oak Park. In exchange for waiving the requirement that the court sit in Pleasant Ridge, Pleasant Ridge would receive one-third of all fines and costs assessed for offenses that originated in Pleasant Ridge. The city of Huntington Woods passed a similar resolution. Plaintiffs argued that defendants did not have the authority to collect fines and costs in excess of the two-thirds collection authorized by the resolutions. Citing SCAO's review for the fiscal years 1996-2012, plaintiffs asserted that the additional court costs collected by defendants for infractions originating in the plaintiff cities should have been distributed to plaintiffs pursuant to the statutory formula prescribed in MCL 600.8379.

Plaintiffs also argued that Oak Park's argument that MCL 600.8104 mandated that plaintiffs help fund the 45th District Court was based on a misinterpretation of the statute. MCL 600.8014(2) states that "a district funding unit shall be responsible for maintaining, financing, and operating the court only within its political subdivision." MCL 600.8014(3) provides that "district funding units within any district *may* agree among themselves any or all of the expenses of maintaining . . . the district court." Plaintiffs argued that the district court was not within their political subdivisions, and therefore, they were not responsible for the expenses set forth in this provision. They emphasized that MCL 600.8014(3) used the permissive term "may" instead of the directive "shall." Plaintiffs remarked that the 45th District Court never presented a budget request to plaintiffs, and if it did, they would not have approved it because their populations and governmental operations budgets were significantly smaller than Oak Park's.[1] Plaintiffs disputed Oak Park's contention that the assessments at issue were fees, and not costs or fines, and were subject to MCL 600.8379(1)(c).

---

[1] According to plaintiffs, Pleasant Ridge has approximately 2,500 residents, and its budget for the 2013-2014 fiscal year was $2,400,000. Huntington Woods has approximately 6,000 residents, and had a total budget for 2013-2014 fiscal year of $6,800,000. In contrast, Oak Park has 30,000 residents, and operates on a 2013-2014 annual budget greater than $45,000,000.

-4-

Oak Park argued in response that the district court was underfunded by plaintiffs and Royal Oak Township, and the court facility was "sorely inadequate." Oak Park cited the 1996 Comprehensive Annual Financial Report, which explained that the assessments beginning in 1995-1996 addressed the problems of retiree healthcare and building expenses. They reiterated that the charges for the building fund and healthcare fund were not costs, and were kept in segregated accounts, pursuant to generally accepted accounting practices.

Regarding plaintiffs' argument that the SCAO reports referred to the assessments as costs, Oak Park argued that the report was not intended as a legal analysis of whether the collected payments for the building and healthcare funds were fees or costs. Oak Park denied that waiving the requirement for the court to sit in plaintiffs' jurisdictions relieved plaintiffs of their obligation under MCL 600.8103(3) to contribute to the expenses for operating the district court.

The 45th District Court filed a brief concurring with Oak Park's summary disposition motion and asserting its own motion for summary disposition. It asserted that the municipalities within the district could not agree on a means of supporting the district court, so Oak Park became the control unit, because of its population size, caseload volume, and available space for court operations. The municipalities could not agree on a formula for expense and cost sharing, and thus complied with the statutory default mechanism. MCL 600.8103, MCL 600.8104, and MCL 699.8379. However, the 45th District Court was never adequately funded. Consequently, it began assessing additional fees for building improvement and retiree healthcare to compensate for inadequate funding.

The 45th District Court cited Oak Park's annual budget for FY 2013-2014 as evidence that the court required the assessments to cover expenses and obligations not paid by plaintiffs. The 45th District Court contended that plaintiffs had not met their responsibility for appropriating their fair share toward the cost of operating the district court, leaving it to Oak Park to make up the difference. Until July 1, 2012, Oak Park's burden was offset by the portion of fines and costs distributed pursuant to MCL 600.8379(1)(c), the building and healthcare fees, and other fees, charges, or penalties. The 45th District Court argued that plaintiffs' obligation to finance, maintain, and support the district court was not limited to the two-thirds allocation of fines and costs pursuant to MCL 600.8379, and that the two-thirds portion allocated to the court was not sufficient to cover plaintiffs' obligations to financially support court operations. The 45th District Court also argued that even if the assessed fees were subject to distribution under MCL 600.8379, plaintiffs would not be entitled to the fees because plaintiffs were historically derelict in their duties to finance court operations.

The trial court granted summary disposition for defendants pursuant to MCR 2.116(C)(10). The court concluded in its order that pursuant to "the clear language of MCL 600.8104 and MCL 600.8271(1), all political subdivisions," including the parties, are "responsible for the funding of the 45th District Court." The trial court ordered plaintiffs to comply with MCL 600.8271(1) "upon receipt of a Chief Judge line item budget which shall also be in with accord with MCR 8.201(A)." The court granted Oak Park the authority to establish a fund for court building improvements. It determined that funds designated for the building fund and retiree healthcare fund were "not fines and costs subject to distribution under MCL 600.8379." The trial court indicated that its order was not final, because Oak Park's claim for

return of revenues incorrectly allocated to plaintiffs from July 1, 2012 to June 30, 2013, had not been resolved.

## III. ANALYSIS

Plaintiffs argue that MCL 600.8104 provides that where the district court serves more than one political subdivision, but sits in only one of them, the political subdivision where the court sits is responsible for the financial operation of the court. Plaintiffs contend that any obligation they have to support the 45th District Court is satisfied by the district court's retention of two-thirds of the fines and costs assessed against litigants for legal violations that originate in plaintiffs' political subdivisions.

We review de novo a trial court's decision on a motion for summary disposition. *Mercantile Bank Mtg Co, LLC v NGPCP/BRYS Centre, LLC,* 305 Mich App 215, 223; 852 NW2d 210 (2014). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). "When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

This issue mainly involves questions of statutory construction, which are reviewed de novo. *Cheboygan Sportsman Club v Cheboygan Co Prosecuting Attorney*, 307 Mich App 71, 75; 858 NW2d 751 (2014). The fundamental goal when constraining a statute is to "determine and give effect to the intent of the Legislature, with the presumption that unambiguous language should be enforced as written." *Id.* The provisions of the statute should be read "reasonably and in context." *McCahan v Brennan*, 492 Mich 730, 739; 822 NW2d 747 (2012). Courts "must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute." *Hannay v Dep't of Transp*, 497 Mich 45, 58; 860 NW2d 67 (2014). Under the principle of *in paria materia*, statutes that relate to the same subject or share a common purpose must be read together as one law. *Titan Ins Co v State Farm Mut Auto Ins Co*, 296 Mich App 75, 83; 817 NW2d 621 (2012).

MCL 600.8103(3) defines a "district of the third class" as "a district consisting of 1 or more political subdivisions within a county and in which each political subdivision comprising the district is responsible for maintaining, financing and operating the district court within its respective political subdivision except as otherwise provided in this act." MCL 600.8104 provides, in pertinent part:

> (1) The term "district funding unit" or "district control unit" means:
>
> * * *
>
> (b) The city or the township in districts of the third class except as provided in subdivision (c).

* * *

(2) Except as otherwise provided in this act, a district funding unit shall be responsible for maintaining, financing, and operating the court only within its political subdivision. In districts of the third class a political subdivision shall not be responsible for the expenses of maintaining, financing, or operating the district court, traffic bureau, or small claims division incurred in any other political subdivision except as provided by section 8621 and other provisions of this act.

(3) One or more district funding units within any district may agree among themselves to share any or all of the expenses of maintaining, financing, or operating the district court. To become effective such agreements must be approved by resolution adopted by the governing body of the respective political subdivisions entering into the agreement, and upon approval such agreements shall become effective and binding in accordance with, to the extent of, and for such period stated in that agreement.

Under this statute, each plaintiff, as a city in a third-class district, qualifies as a "district funding unit" or "district control unit" of the 45th District. Under subsection (2), plaintiffs are not responsible for the expenses of maintaining, financing, or operating the 45th District Court in Oak Park, except as otherwise provided by MCL 600.8621, or other provisions of the act.

MCL 600.8621(1) provides:

District court recorders and reporters shall be paid by each district control unit. In districts consisting of more than 1 district control unit, each district control unit shall contribute to the salary in the same proportion as the number of cases entered and commenced in the district control unit bears to the number of cases entered and commenced in the district, as determined by the judges of the district court under rules prescribed by the supreme court.

MCL 600.8271(1) provides:

The governing body of each district funding unit shall annually appropriate, by line-item or lump-sum budget, funds for the operation of the district court in that district. However, before a governing body of a district funding unit may appropriate a lump-sum budget, the chief judge of the judicial district shall submit to the governing body of the district funding unit a budget request in line-item form with appropriate detail. A court that receives a line-item budget shall not exceed a line-item appropriation or transfer funds between line items without the prior approval of the governing body. A court that receives a lump-sum budget shall not exceed that budget without the prior approval of the governing body.

MCL 600.8379 provides, in pertinent part:

(1) Fines and costs assessed in the district court shall be paid to the clerk of the court who shall appropriate them as follows:

(a) A fine imposed for the violation of a penal law of this state and a civil fine ordered in a civil infraction action for violation of a law of this state shall be paid to the county treasurer and applied for library purposes as provided by law.

(b) . . . In districts of the third class, costs imposed for the violation of a penal law of this state or ordered in a civil infraction action for the violation of a law of this state shall be paid to the treasurer of the political subdivision where the guilty plea or civil infraction admission was entered or where the trial or civil infraction action hearing took place.

(c) . . . In districts of the third class, all fines and costs, other than those imposed for the violation of a penal law of this state or ordered in a civil infraction action for the violation of a law of this state, shall be paid to the political subdivision whose law was violated, except that where fines and costs are assessed in a political subdivision other than the political subdivision whose law was violated, 2/3 shall be paid to the political subdivision where the guilty plea or civil infraction admission was entered or where the trial or civil infraction action hearing took place and the balance shall be paid to the political subdivision whose law was violated.

(d) In a district of the third class, if each political subdivision within the district, by resolution of its governing body, agrees to a distribution of fines and costs, other than fines imposed for the violation of a penal law of this state or ordered in a civil infraction action for the violation of a law of this state, differently than as provided by this section, the distribution of those fines and costs among the political subdivisions of that district shall be as agreed to. An existing agreement applicable to the distribution of fines and costs shall apply with the same effect to the distribution of civil fines and costs ordered in a civil infraction actions.

(e) A civil fine imposed upon a person for violation of a provision of a code or an ordinance of a political subdivision of this state regulating the operation of a commercial vehicle that substantially corresponds to a provision of the Michigan vehicle code, 1949 PA 300, MCL 257.1 to 257.923, shall be paid to the county treasurer and allocated as follows:

(*i*) Seventy percent to the political subdivision in which the citation is issued.

(*ii*) Thirty percent for library purposes as provided by law.

(f) A civil fine imposed upon a person for violation of a provision of a code or an ordinance regulating the operation of a commercial vehicle adopted by a city, township, or village pursuant to section 1 of 1956 PA 62, MCL 257.951, shall be paid to the county treasurer and allocated as follows:

(*i*) Seventy percent to the political subdivision in which the citation is issued.

(*ii*) Thirty percent for library purposes as provided by law.

MCL 600.8261 provides that "[c]ourt facilities shall be provided at those places where the court sits."  In districts of the third class, court facilities "shall be provided by each political subdivision where the court sits."  MCL 600.8251(4) provides as follows for third-class districts:

> In districts of the third class, the court shall sit at each city having a population of 3,250 or more and within each township having a population of 12,000 or more and at other places as the judges of the district determine.  The court is not required to sit in any political subdivision if the governing body of that subdivision by resolution and the court agree that the court shall not sit in the political subdivision.

MCR 8.201 provides:

> (A) Duties of Clerks of Each Third-Class Control Unit Having a Clerk.
>
> (1) On the last day of March, June, September, and December of each year, the clerk of each third-class control unit having a clerk (see MCL 600.8281) shall determine the total number of civil and criminal cases filed during the preceding three months in the district and each political subdivision of the district under subrule (B).  These figures are the total number of cases entered and commenced in that district and each political subdivision.
>
> (2) The clerk shall determine the total cost of maintaining, financing, and operating the district court within the district.
>
> (3) The clerk shall determine the proper share of the costs to be borne by each political subdivision by use of the following formula: (the number of cases entered and commenced in each political subdivision divided by the total number of cases entered and commenced in the district) multiplied by the total cost of maintaining, financing, and operating the district court.
>
> (4) The clerk shall determine the proper share of the salary of the court reporter or recorder under MCL 600.8621(1) by use of the following formula: (the number of cases entered and commenced in each political subdivision divided by the total number of cases entered and commenced in the district) multiplied by the total salary of the court reporter or recorder.
>
> (5) The clerk shall certify the figures determined under subrules (A)(3) and (4) to the treasurer of each political subdivision in the district. Payment by each political subdivision of any unpaid portion of its certified share of the cost and salaries is then due.

Plaintiffs deny a statutory obligation to provide financial support for the district court, relying on the following emphasized language in MCL 600.8104(2) and (3):

-9-

(2) Except as otherwise provided in this act, *a district funding unit shall be responsible for maintaining, financing, and operating the court only within its political subdivision.* In districts of the third *class a political subdivision shall not be responsible for the expenses of maintaining, financing, or operating the district court, traffic bureau, or small claims division incurred in any other political subdivision* except as provided by section 8621 and other provisions of this act.

(3) *One or more district funding units within any district may agree among themselves to share any or all of the expenses of maintaining, financing, or operating the district court.* To become effective such agreements must be approved by resolution adopted by the governing body of the respective political subdivisions entering into the agreement, and upon approval such agreements shall become effective and binding in accordance with, to the extent of, and for such period stated in that agreement. [Emphasis added.]

Plaintiffs overlook the limiting introductory language at the beginning of § 8104(2), "except as otherwise provided in this act," and the similar language at the end of that subsection, which again specifies that the provisions of that subsection apply "except as provided by section 8621 and other provisions of this act."

MCL 600.8621 requires each district funding unit to contribute to the salaries of district court recorders and reporters. MCL 600.8271(1) states that the governing body of each district funding unit "shall annually appropriate . . . funds for the operation of the district court in that district." It is well established "that the term 'may' is permissive,' . . . as opposed to the term 'shall,' which is considered 'mandatory.' " *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). By using the mandatory term "shall," instead of the permissive term "may," MCL 600.8271(1) clearly requires each district funding unit to provide funding for the district court. Reading these provisions of the Revised Judicature Act together, in accordance with the doctrine of *in pari materia*, the statutory scheme clearly imposes on all district funding units in a third-class district a duty to provide financial support for the district court, regardless of which political subdivision the court is seated. *Titan Ins Co*, 296 Mich App at 83.

Plaintiffs argue that if there is such a requirement, it is not triggered until the chief judge submits a proposed budget to the funding unit. Plaintiffs rely on the second sentence in § 8271(1), which states that "before a governing body of a district funding unit may appropriate a lump-sum budget, the chief judge of the judicial district shall submit to the governing body of the district funding unit a budget request in line-item form with appropriate detail." The statutory provision goes on to state that "[a] court that receives a line-item budget shall not exceed a line-item appropriation or transfer funds between line items without the prior approval of the governing body" and "[a] court that receives a lump-sum budget shall not exceed that budget without the prior approval of the governing body." The relevant context of this requirement pertains to the choice of a lump-sum budget over a line-item budget, not to the funding unit's financial obligation.

Plaintiffs argue that the provision in MCL 600.8379(1)(c), which provides for the one-third/two-third allocation of fines and costs assessed where the "fines and costs are assessed in a political subdivision other than the political subdivision whose law was violated," provides the

means by which a funding unit other than the funding unit where the district court sits fulfills its obligation to support the district court. Nothing in MCL 600.8379 supports this interpretation. Section 8379 provides a formula for revenue sharing, but does not indicate that the revenue allocation satisfies the district funding unit's obligation.

Plaintiffs also argue that there is sufficient evidence of the existence of oral agreements between each plaintiff and defendants, in which defendants agreed to refund one-third of revenues from tickets and fines originating in plaintiffs' political subdivisions, and plaintiffs would not incur any additional expenses related to the operation of the 45th District Court. They argue that the evidence shows that the parties formed oral agreements in 1974, or, alternatively, that the parties' conduct establishes an implied-in-fact agreement. Plaintiffs rely on the 1974 resolutions in support of the existence of a contractual agreement. The resolution adopted by the Pleasant Ridge City Commission on December 10, 1974, acknowledges the abolition of the Municipal Court for the city of Pleasant Ridge, and the creation of the 45-B District Court to serve the three cities and Royal Oak Township. The resolution states that the judges of the Oak Park Municipal Court will become the district court judges. It also states that these judges "conferred with the appropriate officials of the City of Pleasant Ridge and with the City Commission and have agreed that the court location requirement of MCLA 600.8251(3) shall be waived and that the district court for the 45-B District shall not be required to sit in the City of Pleasant Ridge." The resolution further states that "the City of Pleasant Ridge will not incur any expenses in connection with the operation of the new district court and will receive one-third of all fines assessed which originate in the City of Pleasant Ridge." Huntington Woods adopted a substantially similar resolution.

Oak Park counters that a search of its records for the years 1974 and 1975 revealed no record of a resolution or agreement pertaining to funding and the operation of the 45-B District Court. Indeed, the 1983 Resolution, CM-04-290-83, clearly indicates that there was no agreement between the communities. The minutes of the April 3, 1983 Oak Park City Council meeting indicate that the council passed a resolution concerning the 45-B District Court. The resolution states, in pertinent part:

> WHEREAS, since January 1, 1975 the City of Oak Park, as the district control unit for the 45-B District Court, has borne the total expense of operating said Court located within its municipal offices, and since 1975 the subsidy from the City of Oak Park General Operating Fund required to maintain the operations of said Court has grown from Fifteen Thousand Sixty-Three Dollars ($15,063) to an estimated subsidy of Two Hundred Forty Nine Thousand One Hundred Fourteen Dollars ($249,114) in fiscal year 1983-84 . . . and

> WHEREAS, the Judges of the 45-B District Court have expressed to the City of Oak Park their inability to properly dispose of cases on their docket due to the inadequacy of facilities . . . and have expressed their desire and intent to have the 45-B District Court sit in other political subdivisions within the 45-B District Court boundaries, unless adequate facilities are provided within the political subdivision of the City of Oak Park and . . .

> NOW, THEREFORE, BE IT RESOLVED AS FOLLOWS:

1.     That the City of Huntington Woods, City of Pleasant Ridge and Township of Royal Oak each are hereby requested, pursuant to Section 8261 of Public Act 154, to provide court facilities within each of their political subdivisions, and to provide for the maintenance, financing and operation of the 45B District Court within their political subdivisions as required by Section 8104 of Public Act 154.

2.     That in the alternative, the City of Hunting Woods, City of Pleasant Ridge and Township of Royal Oak are hereby requested to enter into an agreement with the City of Oak Park to share all the expenses of maintaining, financing and operating the 45-B District Court at a location within the boundaries of the political subdivision of the City of Oak Park. [Council Meeting minutes, April 5, 1983, 48-51, Oak Park Exhibit 3.]

MCL 600.8104(3) provides that district funding units "may agree among themselves to share any or all of the expenses of . . . operating the district court," but "[t]o become effective such agreements must be approved by resolution adopted by the governing body of the respective political subdivisions entering into the agreement." Here, there are no such resolutions. Plaintiffs' resolutions state that they "will *not* incur any expense in connection with the operation of the new District Court," but plaintiffs have not provided any evidence that Oak Park or the 45th District Court assented to these resolutions.

Plaintiffs alternatively argue that the parties' conduct demonstrates an implied contract. "A contract is implied where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Miller v Stevens*, 224 Mich 626, 632; 195 NW 481 (1923). However, MCL 600.8104(3) provides that such agreements are effective only when "approved by resolution adopted by the governing body of the respective political subdivisions." "In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter." *Trentadue v Buckler Automatic Lawn Sprinkler*, 479 Mich 378, 389; 738 NW2d 664 (2007) (citation omitted). Plaintiffs cannot establish the existence of a valid agreement respecting their funding obligations without satisfying the requirements of MCL 600.8104(3).

Moreover, plaintiffs have failed to establish a genuine issue of fact regarding whether a valid contract was formed. "The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. *Mallory v Detroit*, 181 Mich App 121, 127; 449 NW2d 115 (1989). "An implied contract must also satisfy the elements of mutual assent and consideration." *Id.* "The essence of consideration—whatever form it takes—is that there be a bargained-for exchange between the parties." *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012). Plaintiffs state that their implied contract with Oak Park provides that they will receive one-third of all fines and costs assessed for offenses that originated in their respective jurisdictions, and that they would not incur any expenses in connection with operating the district court. This alleged agreement lacks consideration, because plaintiffs do not promise anything in

exchange for their relief from their obligation to provide financial support. Accordingly, plaintiffs cannot establish the existence of a valid contract limiting their financial obligations to the one-third/two-thirds revenue sharing provision.

Plaintiffs argue also that the trial court erred in determining that the monies allocated to the building fund and the retiree healthcare fund were exempt from the one-third/two-thirds split, because they are "fees" and not "costs." The language of MCL 600.8379(1)(c) provides that "all *fines and costs* . . . shall be paid to the political subdivision whose law was violated, except that where fines and costs are assessed in a political subdivision other than the political subdivision whose law was violated, 2/3 shall be paid to the political subdivision where the guilty plea or civil infraction admission was entered or where the trial or civil infraction action hearing took place and the balance shall be paid to the political subdivision whose law was violated". (Emphasis added.) Thus, we must determine whether the monies allocated to the building and retiree healthcare funds are "fines" or "costs" within the meaning of this provision.

MCL 600.4801 provides the following relevant definitions:

(a) "Costs" means any monetary amount that the court is authorized to assess and collect for prosecution, adjudication, or processing of criminal offenses, civil infractions, civil violations, and parking violations, including court costs, the cost of prosecution, and the cost of providing court-ordered legal assistance to the defendant.

(b) "Fee" means any monetary amount, other than costs or a penalty, that the court is authorized to impose and collect pursuant to a conviction, finding of responsibility, or other adjudication of a criminal offense, a civil infraction, a civil violation, or a parking violation, including a driver license reinstatement fee.

(c) "Penalty" includes fines, forfeitures, and forfeited recognizances.

(d) "Civil violation" means a violation of a law of this state or a local ordinance, other than a criminal offense or a violation that is defined or designated as a civil infraction, that is punishable by a civil fine or forfeiture under the applicable law or ordinance.

Neither the building fund assessment nor the retiree healthcare fund assessment qualify as a "cost" within the definition of MCL 600.4801(a). The charge was not assessed or collected for the prosecution, adjudication, or processing of criminal offenses, civil infractions, or other violations. Moreover, we are not persuaded that the term "court costs" in § 4801(a) extends to money collected for a court building fund or court retiree healthcare fund. In interpreting a statute, "effect should be given to every phrase, clause, and word in the statute," and the "statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended." *Sun Valley Foods Co v* Ward, 460 Mich 230, 238; 596 NW2d 119 (1999). MCL 600.4801(a) is a single sentence consisting of a subject (the term "costs"), a linking verb ("means"), and a predicate nominative. The predicate nominative of the sentence is "any monetary amount," followed by a series of modifiers. The first modifier is the subordinate clause, "that the court is authorized to assess and collect . . . ." The object of the

subordinate clause is the infinitive, "to assess and collect." The infinitive is modified by a prepositional phrase that provides a specific list of purposes *for* assessing and collecting the money, namely the actions of "prosecution, adjudication, or processing," which in turn are modified by the prepositional phrase giving a specific list of the objects of those three actions, "of criminal offenses, civil infractions, civil violations, and parking violations." The list of included actions and corresponding objects being then complete, the sentence further modifies the list of actions and corresponding objects with the participial phrase, "including court costs, the cost of prosecution, and the cost of providing court-ordered legal assistance to the defendant." "[I]t is a general rule of statutory, as well as grammatical, construction that a modifying clause is confined to the last antecedent unless a contrary intention appears." *Dale v Beta-C, Inc*, 227 Mich App 57, 69; 574 NW2d 697 (1997). Accordingly, the modifying clause "including court costs" pertains to the last antecedent, "for prosecution, adjudication, or processing of criminal offenses, civil infractions, civil violations, and parking violations." "Court costs" is not a standalone item in the list of monetary charges or assessments that come within the definition of "costs." Rather, "court costs" is an item included in the subset of costs relating to prosecution, adjudication, or the processing of criminal offenses, civil infractions, civil violations, and parking violations. Accordingly, only court costs assessed and collected for those purposes are included in the statutory definition of "costs" in MCL 600.4801(a).

Therefore, monies assessed and collected for the building fund and the retiree healthcare fund are not "costs" under MCL 600.4801(a). Such assessments come within the statutory definition of "fee," which is defined as "any monetary amount, other than costs or a penalty, that the court is authorized to impose and collect pursuant to a conviction, . . . ." MCL 600.4801(b). Because a "fee" is not part of the allocation required by MCL 600.8379(1)(c), neither Oak Park nor the 45th District Court was required to distribute one-third of the assessment to plaintiffs.

Plaintiffs argue that the trial court erroneously relied on *City of Muskegon v Muskegon Co*, 63 Mich App 44; 233 NW2d 849 (1975). Although the trial court referenced that case, which was cited by Oak Park, it did so only in the context of summarizing Oak Park's argument. The court did not rely on that decision in support of its analysis of the issue. We agree that the decision is not relevant to this case. In *City of Muskegon*, this Court addressed whether the plaintiff cities or the defendant county was responsible for paying witness fees for witnesses called by the cities in cases arising from the cities' ordinances. This Court considered MCL 600.8323, which provides:

> Witnesses in the district court shall be entitled to receive the same fees and mileage allowances to which witnesses in circuit court are entitled. Where the county is responsible for such expenses in the circuit court, the district control unit for the place where the trial occurs shall be responsible for such expenses in the district court.

This Court concluded that "because the defendant county would not be responsible for witness and mileage fees for the municipalities' witnesses in circuit court, defendant county is not responsible for such fees in district court." *Id.* at 45. Quoting the trial court's opinion, this Court noted:

-14-

[P]laintiffs further argue that since Muskegon County is a first class district comprised solely of Muskegon County, therefore, as such, it is the sole district control unit involved and is responsible for witness fees. The Plaintiffs further urge that witness fees are an integral part of maintenance, financing and operation of a District Court. See MCL 600.8104(2) . . . . [*Id.* at 46.]

The plaintiffs cited MCL 600.8104 for the statement that a political subdivision in third-class districts "shall not be responsible for the expenses of maintaining, financing, or operating the district court . . . incurred in any other political subdivision . . . ." *City of Muskegon*, 63 Mich App at 46-47. The defendants contended that ordinance violation expenses were never treated as an obligation of the county. *Id.* at 47. This Court agreed that "in both civil and criminal cases, the municipality, as a litigant, is required by R.J.A. s 8323 to pay witness and mileage fees." *City of Muskegon*, 63 Mich App at 53.

*City of Muskegon* is not helpful to the instant analysis, because the Court there did not analyze the issue of distinguishing costs from fees for purposes of distribution under MCL 600.8379. Indeed, this Court quoted extensively from the trial court's opinion, which used the terms interchangeably, as noted here:

Witness fees are not a part of or included in the maintenance, operating or financing of a court. The Court or forum per se is a passive element of the system. Theoretically, the District Control Unit might create the court, maintain it, operate it, and a case may never be tried in it, or a proceeding of any kind may never take place in it. Having created it, maintained, operated and financed it, the District Control Unit has acquitted its obligation under the statute. It is the litigants and their supporting cast (including their witnesses) who are the active participants in the pit. Witness fees are a part of the cost of litigation, not an element of maintaining, operating or financing the court, and it is the litigants who must initially pay their own costs-whether those costs of litigation, costs of prosecution, costs of defense, are ultimately recoverable depending upon result, is a matter determined by Statute or Court Rule. [*City of Muskegon*, 63 Mich App. at 52.]

Plaintiffs observe that the SCAO audit report referred to the charges as costs. The SCAO report referred to the building fund and retiree healthcare assessments as "court costs" and "operational costs." The report noted that the 45th District Court "distributed court costs, with the exception of court costs titled as operational costs . . ." until FY 2013, when it began distributing the operational costs. However, the SCAO report did not address the legal question whether the building fund and retiree health care fund assessments were costs subject to distribution. The terminology used in that report is not dispositive of the proper characterization of the charges for purposes of this case. Plaintiffs suggest that the trial court's decision was premature, because discovery was not complete, and further discovery could provide more evidence whether the assessments are properly classified as costs or fees. However, the classification of the assessments as costs or fees is not a question of fact. It is a question of law, in which discovery would shed no further light.

Finally, we find no merit to plaintiffs' argument that the Legislature's recent amendment of MCL 769.1k supports their position that the retiree health care assessment and building assessment are actually costs subject to distribution. MCL 769.1k addresses a trial court's authority to impose costs when sentencing a criminal defendant. In *People v Cunningham*, 496 Mich 145, 154-155; 852 NW2d 118 (2014), our Supreme Court observed that the statute authorizes a court to impose costs at sentencing, but held that it did not authorize a court to impose "any cost," but rather "only those costs that the Legislature has separately authorized by statute." In response to the *Cunningham* decision, the Legislature amended MCL 769.1k, effective October 17, 2014. The enacting sections provide:

> Enacting section 1. This amendatory act applies to all fines, costs, and assessments ordered or assessed under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before June 18, 2014, and after the effective date of this amendatory act.

> Enacting section 2. This amendatory act is a curative measure that addresses the authority of courts to impose costs under section 1k of chapter IX of the code of criminal procedure, 1927 PA 175, MCL 769.1k, before the issuance of the supreme court opinion in People v Cunningham, 496 Mich 145 (2014).

The decision in *Cunningham*, and the subsequent statutory amendment, address the trial court's authority to assess certain categories of costs against a convicted criminal defendant. The issue presented in this case does not concern whether the 45th District Court or Oak Park has authority to impose the building or retiree healthcare fund assessments, but whether plaintiffs are entitled to a one-third split of those assessments under MCL 600.8379(1)(a). Neither the *Cunningham* decision nor the statutory amendment of MCL 769.1k have any relevance to the interpretation of MCL 600.4801.

Accordingly, we affirm the trial court's determination that the monies allocated to the building fund and the retiree healthcare fund are not subject to the one-third/two-thirds distribution scheme in MCL 600.8379(1)(a). In light of this decision, it is unnecessary to address Oak Park's alternative argument that the doctrine of laches should also preclude plaintiffs from receiving a one-third distribution of monies collected for the building and retiree healthcare funds.

Affirmed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Karen M. Fort Hood

-16-